**Donald T. JAQUA, Appellant (Petitioner),**

v.

**STATE of Wyoming, ex rel., WYOMING WORKERS' COMPENSATION DIVISION, Appellee (Respondent).**

No. 93–167.

Supreme Court of Wyoming.

May 3, 1994.

Donald L. Painter, Casper, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Kenneth E. Spurrier, Asst. Atty. Gen., W. Thomas Sullins, II, Sp. Asst. Atty. Gen., for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

THOMAS, Justice.

The sole issue presented in this appeal is whether substantial evidence exists to support a denial of benefits under the Wyoming Worker's Compensation Act (WYO.STAT. §§ 27–14–101 to –805 (1991 & Supp.1993)). Donald T. Jaqua (Jaqua), in a creative manner, attempts to couch the question as one of law; but we are satisfied the determination by the hearing examiner is supported by substantial evidence, and the question truly is one of fact. Jaqua asserted an entitlement to benefits because of a back injury he sustained as a result of a fall on stairs while working as an employee of the Wyoming Highway Department. The Worker's Compensation Division (State) asserts that Jaqua is not entitled to benefits because the medical expenses and any disability were attributable to a preexisting condition. We hold Jaqua did not satisfy his burden of proof to establish his injury was related to his work. We affirm the Order on Appeal entered in the district court affirming the decision of the hearing examiner.

In his Appellant's Brief, Jaqua states this issue:

1. Whether Defendant's "injury" was, as a matter of law, a new injury or a recurrence of an old injury.

In the Brief of Appellee, the issue is asserted to be factual and is stated as:

I. Whether substantial evidence exists to support the hearing examiner's denial of employee-claimant's claim for worker's compensation benefits.

Jaqua was employed by the Wyoming State Highway Department (Department) in 1984. More than twenty years earlier, he sustained an injury to his back while serving in the Navy in 1961. Jaqua testified he had experienced back discomfort on numerous occasions during the twenty-three year peri-

od between the injury when he was in the Navy and his employment at the Department. He treated this back discomfort with non-prescription medication. Later, he experienced occasional discomfort in his surveying work for the Department when he was doing extensive walking and carrying equipment.

In 1988, Jaqua had nonwork-related surgery on his back involving a decompression laminectomy and the removal of a herniated disc. His medical records show he suffered an injury, which was not compensable, from a fall in November of 1989. On July 18, 1990, a Magnetic Resonance Imaging (MRI) diagnosis was accomplished due to bilateral hip pain and right side back pain, apparently induced by the 1989 fall. Again, on April 6, 1992, Jaqua sought treatment for his back condition. The report of the physician advises, "He [Jaqua] has progressive increasing symptoms over the past few years. He complains of pain in his back which radiates into his buttocks, notes feeling of numbness in both legs." The physician prescribed a back rehabilitation program.

Three weeks later, on April 27, 1992, according to Jaqua's report, he lost his footing, fell down a few stairs, landed in a sitting position, and injured his arm and buttocks while at work. He sought treatment from a physician in Phoenix, Arizona whose medical history record noted the failure of conservative treatment of rest, time, therapy, and past surgery, and also noted a continuing disk problem that had troubled Jaqua for a prolonged period. The Arizona physician performed back surgery on July 14, 1992.

Jaqua filed an Employee's Report of Injury, Occupational Illness or Disease related to the April 27, 1992 fall. The State issued an Initial Review—Due to Pre-Existing Condition and denied benefits because the medical reports reflected Jaqua's back condition was preexisting. Subsequently, the State furnished a Determination of Disputed Claim in which benefits again were denied because no medical evidence established Jaqua's back condition was the result of the accident while at work. Jaqua objected to the determination by the State, and a contested case hearing was scheduled. The hearing was contin-

ued on two occasions, due to the hearing examiner's request for additional discovery, and culminated on the third occasion when the Order Denying Benefits was issued. The critical findings in that Order Denying Benefits are:

1. That Employee–Claimant has failed to meet his burden of proof with respect to the benefits claimed, and the objections of the Objector–Defendant, State of Wyoming, ex rel., Wyoming Workers' Compensation Division to the award of the benefits claimed is sustained.

2. That Employee–Claimant has failed to meet his burden of proof to establish an "injury" pursuant to W.S.1977, § 27–14–102(a)(xi).

3. That the evidence presented reflects that Employee–Claimant had a pre-existing injury or condition, and therefore the claims for benefits herein are precluded pursuant to W.S.1977, § 27–14–102(a)(xi)(F).

4. That as a result of the inconsistencies in the Employee–Claimant's testimony and asserted positions with the notes, records, and testimony of the medical care providers herein, the Employee–Claimant has failed to meet his burden to establish a work related injury herein.

This Order Denying Benefits was affirmed by the district court of the Seventh Judicial District after judicial review was sought. Jaqua has appealed the order of the district court.

Our standard of review with respect to factual determinations by administrative agencies, particularly in Worker's Compensation cases, is well known:

Our standard for reviewing findings of fact made in an administrative worker's compensation hearing is well settled. If, after examining the entire record, we find substantial evidence to support the agency's finding, we will not substitute our own judgment for that of the agency. Instead, we will uphold the agency's finding. Substantial evidence is relevant evidence which a reasonable person might accept as supporting the agency finding. *Aanenson v. State of Wyoming ex rel. Wyoming*

*Worker's Compensation Division,* 842 P.2d 1077, 1079 (Wyo.1992).

*Sinclair Trucking v. Bailey,* 848 P.2d 1349, 1351 (Wyo.1993).

■ The party who appeals from an administrative determination has the burden of proving the lack of substantial evidence to sustain the ruling of the agency. *Application of Campbell County,* 731 P.2d 1174 (Wyo.1987). In order to prevail before the hearing examiner, Jaqua was charged with demonstrating an injury, arising from his employment, while at work. That definition of injury is found in the Wyoming Worker's Compensation Act as follows:

> (xi) "Injury" means any harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business. "Injury" does not include:
>
> \* \* \*
>
> (F) Any injury or condition preexisting at the time of employment with the employer against whom a claim is made.

WYO.STAT. § 27–14–102(a) (Supp.1993).

We emphasize the exclusion found in this statute.

■ At the hearing, Jaqua's evidence consisted primarily of his testimony, much of which supports the determination of a preexisting condition. He advised he experienced very uncomfortable backaches in 1961, although they were not debilitating. He claimed the Navy had diagnosed his problem as a prostate ailment. He conceded he was uncomfortable on numerous occasions because of his back ailment between the time of his release from the Navy and before he became an employee of the Department. At one point in his testimony, Jaqua stated he did not seek any medical treatment for his back discomfort during this period, but he later testified he had received the benefit of an MRI diagnostic procedure in Denver through the Veterans Administration and, in California, X-rays had been taken relating to his back problems.

Jaqua testified that, prior to April 27, 1992, the only work he had missed due to his back ailment occurred in 1988 when he was off work for approximately two months because of back surgery for a nonwork-related injury. He received a full release from his surgeon and returned to his work at the Department. He said that, for a period of four or five months prior to the fall on April 27, 1992, he had experienced aching in his middle and upper back, and he had sought medical relief on April 6, 1992. He described the critical accident as a slip and fall on a stairway that caused extreme discomfort in his lower back. No one else was present at the time.

In subsequent testimony, Jaqua stated MRI diagnostic procedures prior to and after this fall demonstrated changes in the condition of his back. This statement was supported, however, with only equivocal medical records and testimony of a physician. The physician in Arizona who had performed the most recent surgery testified he "thought it [the disk] was larger" after this accident. In his deposition, he did point out that the symptoms described to him by Jaqua were solely of the left anterior thigh whereas the symptoms described to the treating physician in Laramie included pain in his back radiating into his buttocks and no feeling in both legs.

With respect to the treating physician's report in the medical record, Jaqua disavowed the statement that he had injured his back over thirty years earlier; declared the medical records of the doctor were not accurate; and contended the doctor's report was wrong when it described tenderness in the lower back, lumbosacral junction. He also asserted the State was not supposed to have those medical records. Jaqua denied he had told the Phoenix physician he had experienced the back injury on April 27, 1992 when he fell into a two-foot hole. On his accident report filed April 30, 1992, Jaqua stated he had never suffered an injury to his back prior to the accident.

The hearing examiner was clear in his statement that medical testimony was very important in Jaqua's case. He encouraged Jaqua to present any medical testimony from his treating physicians or from his records that would assist in substantiating his claim. A chronological examination of the evidence available to the hearing examiner demonstrates more than substantial evidence for the finding of fact that Jaqua's injury was not work related. These basic facts support the conclusions Jaqua had failed to meet his burden of proof to establish an injury pursuant to the statute and the condition was the product of a preexisting injury were justified. The State did offer substantial, competent medical evidence to support the order and deny benefits.

In April of 1988, a discharge summary by the physician who had accomplished Jaqua's back surgery states:

A long history of back and leg pain. He had a previous service injury with back and leg pain. MRI was done in April which showed disc herniation at the L2–3 interspace of the right midline, and the L3–4 interspace centrally with some associated hypertrophic changes at these levels, and specific spinal stenosis at L3–4 level.

An evaluation of Jaqua was accomplished by a licensed physical therapist on May 17, 1988 and that revealed that he was complaining of low back pain. The evaluation states:

Patient states that the original injury was in the Navy approx. 35 years ago and that it has been getting progressively worse. * * * Patient states he has had multiple old injuries, but otherwise than that considers himself in good medical health.

The report of the MRI diagnosis of Jaqua's lumbar spine on July 18, 1990 advised Jaqua had fallen in November, 1989 and had bilateral hip pain with right side back pain since that time. In a Progress Note entered April 6, 1992, the initial treating physician for this claimed injury stated:

Donald [Jaqua] is a 53–year–old male who injured his back over 30 years ago. * * * He has progressive increasing symptoms over the past few years. He complains of pain in his back which radiates into his buttocks, notes feeling of numbness in both legs. * * * Patient reports increasing tenderness in the region of the lumbosacral junction.

This report was made prior to the injury for which benefits were sought.

On May 6, 1992, another MRI procedure was accomplished after the April 27, 1992 injury. It was compared with the report of the MRI diagnosis accomplished on July 18, 1990. The physician concluded, "[t]his does not appear to have shown any significant change when compared to the previous study. * * * Prominent central disk herniation, L–3 level, unchanged when compared with the previous study." This is to be compared with the neurosurgical consultation accomplished by the Phoenix physician on July 7, 1992, which stated:

Back pain, left leg pain, numbness, weakness * * * white male states he had problems with his back for a prolonged period of time * * * was operated on in 1988. The patient did reasonably well, got back to work as a surveyor until April 27, 1992 when he **fell into a two foot hole** and since that time could not work. * * * He had a previous MRI scan carried out in 1990, and it appears to me that the disc is somewhat larger at the present time, although it is **difficult to be absolutely sure.** (Emphasis added.)

After offering this equivocal testimony, Jaqua, through his counsel, asserted that, because the Department did not terminate him in 1988 following his nonwork-related back surgery, the Department must have in some way assumed the risk of further injury to his preexisting condition. We can find no basis in our law or statutes for that premise, and Jaqua does not provide one. It, therefore, is not applied in our resolution of this case. We have said with respect to the Wyoming Worker's Compensation Act:

In *Abas v. State ex rel. Wyoming Worker's Compensation Division*, Wyo., 701 P.2d 1153, 1156 (1985), we held that

"worker's compensation statues are to be liberally construed to effectuate their beneficent purpose. The purpose of such construction is to require the indus-

try to bear the burden of industrial accidents, not the injured worker. But we cannot ignore clear statutory language and apply worker's compensation statutes to situations that do not reasonably fall within the intended ambit of such laws."

*Woodman v. Grace Bomac Drilling,* 736 P.2d 313, 315 (Wyo.1987).

It is unfortunate Jaqua has suffered from problems with his back for much of his life. He reported to the Phoenix physician that his life had become "absolutely miserable" due to the pain. In accordance with what we have said, however, we cannot ignore the clear mandate of the law and order compen-

sation for a preexisting condition nor order compensation where the denial, premised upon the absence of a work-related injury, is supported by substantial evidence.

After examining the entire record, in accordance with our standards, we perceive substantial evidence to support the findings of the hearing examiner. The denial of worker's compensation benefits is affirmed.