John Otis CARNEY, Black Butte Partners, a partnership, and Carney Land Company, a Wyoming corporation, Appellants (Petitioners),

v.

BOARD OF COUNTY COMMISSIONERS OF SUBLETTE COUNTY, Wyoming, Richard B. Dew and Peyton H. Dew, Appellees (Respondents).

Richard B. DEW and Peyton H. Dew, Appellants (Respondents),

v.

BOARD OF COUNTY COMMISSIONERS OF SUBLETTE COUNTY, Wyoming, Appellee (Respondent),

v.

John Otis CARNEY, Black Butte Partners, a partnership, and Carney Land Company, a Wyoming corporation, Appellees (Petitioners).

Nos. 87-13, 87-14.

Supreme Court of Wyoming.

June 23, 1988.

Henry C. Phibbs, II, Phibbs & Resor, Jackson, for John Otis Carney, Black Butte Partners and Carney Land Co.

John V. Crow, Sublette County Atty., Pinedale, for Bd. of County Comm'rs of Sublette County, Wyoming.

Kenneth S. Cohen, Jackson, for Richard B. Dew and Peyton H. Dew.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

THOMAS, Justice.

The primary question posed in these consolidated cases concerns the nature and scope of the procedure contemplated by the phrase in the Wyoming Statutes relating to the establishment of private roads, which provides, with respect to the meeting of the

viewers and appraisers, that "all persons interested may appear and be heard by the viewers." Section 24–9–101, W.S.1977 (1987 Cum.Supp.). There are collateral issues raised relating to claims that the decision of the viewers and appraisers was premised, in substantial part, upon information not material under the statutory criteria for location of a private road and a concern, in the cross-appeal, that damages were awarded for the establishment of the road in areas in which the applicants for the establishment of the private road already held easements. We are satisfied that the board of county commissioners correctly followed the statute in this instance; the parties were afforded appropriate due process; and the district court correctly affirmed the order of the board of county commissioners confirming the report of the viewers and appraisers and declaring the establishment of a private road. We affirm the judgment of the district court in all respects.

In their appeal, the owners of the servient estate, John Otis Carney, Black Butte Partners, a partnership, and Carney Land Company, a Wyoming corporation (Carneys), set forth the following issues:

"I. Should the order of the district court affirming the decision of the county commissioners be reversed by virtue of the fact that appellants were denied an opportunity to appear before the viewers and appraisers and be heard regarding the question of the damages caused by the location of the roadway?

"II. Should the order of affirmance of the district court and the decision of the county commissioners approving the report of the viewers and appraisers be reversed because the decision of the viewers and appraisers was based, in substantial part, upon hearsay information regarding a matter which is not relevant to the statutory criterion to be utilized by the viewers and appraisers for establishing the private roadway, which information appellants were not afforded any opportunity to respond to?"

Richard and Peyton Dew (Dews), as appellees, rephrase those issues in this fashion:

"I. Were appellants denied an opportunity to address the viewers and appraisers on the issue of damages? If so, must this case be remanded to the administrative level in order to rectify this error?

"II. Was the decision of the viewers and appraisers in selecting 'the Carney route' based in substantial part upon information which they did not have a right to consider? If so, must the case be remanded to the administrative level in order to rectify this error?"

The Dews took their own appeal in this case, and the issue they present is stated in this way:

"Should appellants have been required to pay damages for those portions of the private roadway which were already subject to recorded rights-of-way in their favor?"

The Carneys, in defending the Dews' appeal, identify the issue to be:

"An applicant for a private roadway, who seeks to rely upon recorded right-of-way easements, must submit such easements as part of the application to the county commissioners, to allow any challenge to the easements to be judicially determined before the easements are used for any purpose in connection with the roadway proceeding."

The Dews are the owners of 240 acres of land in Sublette County, Wyoming. The property has been in the Dew family since the early 1920's, and, until the 1940's, a dude ranch was operated there. Since sometime in the 1940's, the Dews have used the property primarily for a summer residence. Historically, access to the property was had by traveling over a dirt road that traversed the Carneys' property, and the Carneys never objected to the usage of that road by the Dews. Grants of easements had been obtained that purported to create a right to use a portion of the historical access road, but the Dews did not have easements that would permit access all the way to their property from a public road. The Carneys never made any objection to the usage of the access road traversing their property by the Dews.

The absence of complete access to the Dews' property became a matter of concern in 1983 when they decided to sell their land and listed it with a broker. They learned then that, in the absence of legally enforceable access, the property was virtually unmarketable. The Dews negotiated with the Carneys for an easement over a route described as the "Carney route," but those negotiations were not fruitful. At that time, the Dews became aware of a potential route to their property, which was shorter and which traversed the Carneys' land in part and in part lands of various third parties. This way of access was called the "Goodman route."

In January of 1985, the Dews pursued the procedure set forth in §§ 24-9-101 through 24-9-103, W.S.1977, and filed an application for establishment of a private road with the Board of County Commissioners of Sublette County (Board). In accordance with the provisions of the statute, the Dews' application asserted that their property was without access, and they described the two possible routes, designating the Goodman route as the preferred route. The initial hearing, contemplated by the statute, occurred before the Board on March 19, 1985, and the Board then determined that the Dews' property was landlocked. In compliance with the requirements of the statute, the Board appointed three viewers and appraisers to meet at the proposed routes on June 7, 1985 to locate a private road and assess damages to any affected property owners.

In accordance with the Board's order, the viewers and appraisers met at the designated time and place. They invited interested persons in attendance to address them regarding the proposed routes. After hearing the comments of those present, including representatives of the Carneys and the Dews, the viewers and appraisers traveled over each of the proposed routes. There is no record of the dialogue that was exchanged prior to the examination of the proposed routes. Later, the viewers and appraisers prepared a report reflecting their decision that the private road should follow the Carney route and their assessment of damages at $1,000 per acre. This report was presented to the Board on June 18, 1985, and a hearing then was held. The Board heard statements from the attorneys for the Dews and the Carneys, and these counsel were afforded the opportunity to cross-examine the viewers and appraisers, which the Carneys' attorney did, at some length. In the course of this hearing, the viewers and appraisers decided to amend their report orally to permit a deviation in a portion of the road away from the Carney residence. At the conclusion of this hearing, the Board accepted the report as orally amended and ordered the Dews to survey and prepare a plat of the designated road.

The plat of the road was completed in February of 1986, and it was presented to the Board at its meeting on July 1, 1986. Upon determining that the Dews had paid the required costs and damages and that the plat had been completed as ordered, the Board declared the Carney route to be a private road and ordered that the plat be filed with the county clerk.

Both the Dews and Carneys filed petitions for judicial review in the district court, arguing essentially the same issues that they urge in this appeal. The district court entered its order affirming the Board's decision, and, after a motion for reconsideration presented by the Carneys was denied, these cross-appeals were perfected.

We first treat with the contention by the Carneys that they were denied due process because, prior to the time that the viewers and appraisers made their decision locating the private road, the Carneys were not afforded an opportunity to address the viewers and appraisers, particularly, with respect to damages. This contention is founded upon the procedural step described in the statute as follows:

"* * * [S]aid board shall appoint three (3) disinterested freeholders and electors of the county, as viewers and appraisers, and shall cause an order to be issued directing them to meet on a day named in such order on the proposed road, and view and locate a private road according to the application therefor, and to assess

damages to be sustained thereby, and if for any reason such viewers and appraisers are unable to meet at the time set by the board to view said proposed road, they may fix some other date, but shall be required to give notice in writing to the owner or resident agent or occupant of said lands over which said road is proposed to be laid of the time and place where such viewers shall meet, at least ten (10) days before viewing such road, at which time and place all persons interested may appear and be heard by said viewers." Section 24–9–101, W.S.1977.[1] The contention is founded upon the phrase of the statute providing that "all persons interested may appear and be heard by the viewers."

No record was maintained of the proceedings at the time of the June 7, 1985 viewing. From subsequent descriptions of what occurred, it appears that, before traversing the proposed routes, the viewers and appraisers heard the comments of the interested parties who were present, particularly, counsel for the Carneys. At that time, the county attorney suggested that it would be of assistance to the viewers and appraisers if counsel would submit written summations of what they perceived to be the proper elements of damages. After the viewing had occurred, the county attorney offered the further suggestion that counsel wait until the viewers and appraisers had determined the route before submitting their recommended elements of damages. Any effort on the part of counsel to submit their written views on the elements of damages was frustrated, however, when the viewers and appraisers returned to the courthouse, met privately for thirty-five minutes to an hour and then advised the county attorney that they had made a decision as to the route and the amount of damages. The Carneys contend that they were entitled to address the viewers and appraisers on both the route to be selected and the appropriate damages to be assessed prior to any decision by the viewers and appraisers. We do not agree that this is the law.

We have recognized that the procedure to establish a private road set forth in the statutes requires a due process hearing because of the property rights that are involved. *Gold v. Board of County Commissioners of Teton County*, Wyo., 658 P.2d 690 (1983). In that case, we held that the right to the due process hearing must be afforded before the board of county commissioners pursuant to § 24–9–103, W.S.1977,[2] and that the affected landowner must be afforded a right to appear before the board to contest both the taking and the damage awards determined by the appraisers. *Gold v. Board of County Com-*

---

1. This statute was amended with an effective date of May 23, 1985. The statute now reads as follows:

   " * * * [T]he Board shall appoint three (3) disinterested freeholders and electors of the county as viewers and appraisers, and shall cause an order to be issued directing them to meet on a day named in the order on the proposed road, and view and locate a private road according to the application therefor, and to assess damages to be sustained thereby. If for any reason the viewers and appraisers are unable to meet at the time set by the board to view the proposed road, they may fix some other date, which shall give notice in writing to the owner, resident agent or occupant of the lands over which the road is proposed to be laid of the time and place where the viewers will meet, at least ten (10) days before viewing the road, at which time and place all persons interested may appear and be heard by the viewers." Section 24–9–101, W.S.1977 (1987 Cum.Supp.).

We do not perceive any significance in these adjustments to the language of the statute.

2. Section 24–9–103, W.S.1977, provides:

   "The viewers and appraisers so appointed, or a majority of them, shall make a report to the county commissioners at the next regular session, of the private road so located by them, and also the amount of damages, if any, assessed by them, and the person or persons entitled to such damages, and if the commissioners are satisfied that such report is just, and after payment by the applicant of all cost of locating such road, and the damages assessed by the viewers, the commissioners shall order such report to be confirmed and declare such road to be a private road, and the same shall be recorded as such. Any person aggrieved by the action of the board or as to the amount of damages awarded, may appeal to the district court at any time within thirty (30) days after said road is finally established by said board of county commissioners."

*missioners of Teton County,* supra, controls the issue urged here by the Carneys. Since the right of the Carneys to due process is satisfied by the hearing before the Board, we conclude that the legislature did not intend that a hearing also would occur before the viewers and appraisers.

In this instance, at the subsequent meeting of the Board, when the viewers and appraisers presented their report, counsel for both parties were heard by the Board, and the viewers and appraisers were examined at some length by counsel for the Carneys. The record discloses that the viewers and appraisers were persuaded to alter the proposed route as a result of this examination. This adjustment in the route appeared to be the thrust of counsels' examination and arguments to the Board, and the proposed assessment of damages was not challenged, except for the statement that the Carneys had not had an opportunity to address the viewers and appraisers on this question. No effort was made to submit evidence as to what the Carneys believed the appropriate assessment of damages should be, nor was there any contention that the figure reached by the appraisers was inadequate.

The Carneys' right to a hearing was afforded to them at the hearing before the Board. The procedures utilized by the viewers and appraisers in this instance satisfied the statutory phrase, "at which time and place all persons interested may appear and be heard by the viewers." The ranch manager for the Carneys and their attorney met with the viewers and appraisers before the viewing, and counsel discussed with them the proposed routes. The Carneys' attorney also went with the viewers as they drove over the alternate routes. The statute does not specify what information the viewers and appraisers are to receive, nor does it indicate what weight they must accord to what they hear. The verb used in the statute is "may," not "shall," and it is not used in a context that would require us to afford a mandatory connotation to the word "may." See *Board of County Commissioners of the County of Fremont v. State, ex rel. Miller,* Wyo., 369 P.2d 537, 542 (1962). The

Carneys were afforded an opportunity to test damages at the hearing before the Board, but they did not pursue that issue at that time. Consequently, there could not possibly be any prejudice because they were not afforded an opportunity to address the viewers and appraisers on the question of damages. Under the circumstances, there was no denial of due process.

◼ In their second claim of error, the Carneys contend that the decision of the Board in this instance was arbitrary, capricious and not in conformity with law because it adopted the report of the viewers and appraisers, which was, in part, premised on an assumption that a portion of the route selected would continue to be utilized by an oil company. In their report, as substantiated by examination at the hearing before the Board, the viewers and appraisers set forth several reasons for their selection of the Carney route, which included: (1) it was an established route that had been used for years; (2) the alternate Goodman route would require road building and placement of gates and cattleguards; (3) the Carney route is an improved road; and (4) the Carney route at that time afforded access to oil and gas developers as well as other ranchers in the area so that any additional use by the Dews would be minimal. Upon examination, one of the viewers agreed that the viewers and appraisers had no actual knowledge of any future rights of the oil company to traverse the road, but he explained:

> "You have one well that's sitting over there just a half a mile off of that main route that has a Christmas tree on it, it's a gravel road. You also have the quite elaborate graveled road and elaborate bridge there, and I, for the life of me, cannot understand why an oil company would build that if they did not have any intentions of future application."

The statutory criterion for selection of a route for a private road is that the viewers and appraisers are to locate a route that will "do the least possible damage to the lands through which such private road is

located." Section 24–9–101, W.S.1977. In that regard, the route chosen need not be the most convenient and reasonable route possible, taking into account all possible routes, but it only need be a reasonable and convenient route. *McGuire v. McGuire*, Wyo., 608 P.2d 1278 (1980). The statute does not specify those things the viewers and appraisers are to consider other than the "least possible damage" to the property. The legislature has directed, however, that these viewers and appraisers should be three disinterested freeholders and electors of the county, and, presumably, that requirement contemplates that they will be knowledgeable with respect to the local conditions and will apply that knowledge and their common sense in arriving at a determination. That was done in this case.

The viewers and appraisers gave substantial reasons for selecting the Carney route. Upon receiving their report and conducting a hearing, the Board then accepted and confirmed the report of the viewers and appraisers. We note that, at the hearing, the Carneys did not choose to refute the assumption of the viewers and appraisers that the oil company would continue to use at least part of the Carney route. The standard invoked in determining whether an agency's decisions are arbitrary, capricious or an abuse of discretion is whether it is supported by evidence found in the record. *Holding's Little America v. Board of County Commissioners of Laramie County*, Wyo., 670 P.2d 699 (1983). There is ample evidence in this record to support the decision of the Board. We hold, contrary to the Carneys' claim, that this decision was neither arbitrary nor capricious, and it was in conformity with the applicable law.

■ We turn then to the contention on cross-appeal by the Dews that they should not have been required to pay damages for those portions of the private road which they claim were covered by prior, granted easements of record. On the record, there is no way to tell whether the private road established by the order of the Board actually followed any prior easements of record. We conclude, however, that, whatever that situation might be, the Dews abandoned any rights they might have had under those prior easements, and the damages assessed by the viewers and appraisers and approved by the Board were correct.

Both of these prior easements were entitled "Right-of-Way Grant," and they were executed in 1971 and recorded in 1973. The grantors on these instruments were Donald and Nellie Rogers, who were predecessors in title to certain of the Carneys' lands, and Carney Land Company. Each of the instruments grants to the Dews a right-of-way over "the presently existing roads situate upon and over [a portion of the present Carney lands]." The Dews now contend that approximately two-thirds of the Carney route is covered by these prior easements.

In the course of the initial hearing before the Board on the Dews' application for a private road, testimony was received from an agent of a title insurance company. The agent stated that his office was of the opinion that the Dews had no legally enforceable access to their property. He testified further that, in the course of a title search, his office had discovered the two recorded easements. The attorney for the Dews did not pursue this information other than to inquire whether the witness was aware of the effect of § 34–1–141, W.S. 1977, making void certain easements not specifically described in the recorded instrument.[3] At a later point in the same

---

3. Section 34–1–141, W.S.1977 (1987 Cum.Supp.), provides, in pertinent part:
   "(a) Except as provided in subsection (c) of this section, easements across land executed and recorded after the effective date of this act which do not specifically describe the location of the easement are null and void and of no force and effect.
   \* \* \* \* \* \*

"(c) For purposes of this act [section], an easement or agreement which does not specifically describe the location of the easement or which grants a right to locate an easement at a later date shall be valid for a period of one (1) year from the date of execution of the easement or agreement. If the specific description is not recorded within one (1) year,

hearing, Richard Dew testified that everyone who was involved questioned the validity of these prior easements.

The application for a private road filed by the Dews did not refer to these easements. No mention of them was made to the viewers and appraisers on the date of the viewing. At the hearing before the Board on June 18, 1985, when the parties were afforded an opportunity to contest the report of the viewers and appraisers, the question of the easements never was raised, but counsel for the Dews reiterated the preference of his clients for the Goodman route. At that time, he asserted, on behalf of the Dews, that the assessed damages would be significantly less if the shorter route were the one the viewers and appraisers selected. The product of that hearing was the Board's acceptance of the viewers' report with respect to the location of the private road and the assessed damages.

After the survey work was completed, in February of 1986, the Dews' attorney for the first time advised the county attorney that his clients intended to rely on the prior easements and to pay only those damages attributable to the portion of the road not subject to the prior easements. The county attorney responded that he believed the decision of the Board in accepting the report of the viewers and appraisers was final and that he would recommend to the Board that it stand on the report as it had been accepted. A final Board hearing on the matter then was held, on July 1, 1986, for the purpose of determining if the survey work and plat were completed and if the costs and damages had been paid according to the assessments. These are prerequisites to the establishment of the private road. At that time, counsel for the Dews sought to raise the issue of the easements before the Board and offered evidence with respect to them. The Board refused to accept the evidence and proceeded to declare the surveyed route established as a private road.

The conduct of the Dews throughout the decision-making phase of this proceeding

then the easement or agreement shall be of no

was inconsistent with any assertion of their rights under the recorded easements, and, in fact, they evidenced a purpose inconsistent with the further existence of such easements. They did not include the easements as a part of their application for the establishment of a private road nor in the hearing. Consistently, they urged the selection of an alternate route which they preferred. At the time the recorded easements were mentioned in the initial hearing, the Dews, through their counsel, sought to downplay their significance in order to bolster their claim to the alternate route. They waited until the decision-making process was completed, and damages had been assessed, before asserting their rights under the alleged easements. In their briefs, the Dews offer several reasons to explain the fact that they did not raise the issue of the easements earlier, including: (1) a concern over complicating the proceedings with questions of the validity of the easements, (2) a concern that the easements might be declared void because of their insufficient descriptions and (3) their preference for the Goodman route.

In Wyoming, except to the extent that common law has been changed by statute, the rules of common law are invoked with respect to easements. An easement can be abandoned at common law. In one of the leading texts on real property, the proposition is stated in this way:

> "The owner of an easement may abandon his right so as to relieve the servient estate of the encumbrance, but the abandonment must be evidenced by unequivocal acts showing clearly such purpose." 2 G. Thompson, Commentaries on the Modern Law of Real Property § 443 at 728–729 (1980 Repl.).

Such an abandonment "is effected by unequivocal acts in pais inconsistent with further assertion of rights." 2 G. Thompson, Commentaries on the Modern Law of Real Property, supra, § 443, at 730. Further propositions appear in this text to the effect that "an express abandonment of the easement is implied from circumstances" and "there must be evidence of a present

further force and effect."

intent to relinquish the easement or a purpose inconsistent with its further existence" (2 G. Thompson, Commentaries on the Modern Law of Real Property, supra, § 443 at 739, 741). We perceive the facts of this record, including the reasons advanced by the Dews for not earlier raising the issue of the easements, as manifesting an intent to relinquish easements that can be implied from the circumstances. The only conclusion that can be drawn from the record is that the Dews determined not to rely upon any easement rights they may have had in order to advance the establishment of the private road over the Goodman route. They only wanted to assert such rights when it appeared that it might be a mitigative factor with respect to damages. We hold that, under the circumstances, these easement rights were effectively abandoned, and the Board properly refused to consider them in assessing damages for the private road.

The order of the district court affirming the decision of the Board of County Commissioners in this case is affirmed.