**In the Matter of the Worker's Compensation Claim of Melvin W. ANDREN.**

**The CELOTEX CORPORATION, Appellant (Respondent–Employer),**

v.

**Melvin W. ANDREN, Appellee (Petitioner–Employee).**

No. 95–250.

Supreme Court of Wyoming.

May 28, 1996.

Colin M. Simpson of Simpson, Kepler & Edwards, L.C., Cody, for appellant.

Wm. Daniel Elsom and George Lemich of Elsom and Lemich, Cody, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

MACY, Justice.

Appellee Melvin Andren (the employee) sought review in the district court of the hearing examiner's order which denied his request for worker's compensation benefits. The district court reversed the hearing examiner's order, finding that the employee was entitled to receive benefits. Appellant Celotex Corporation (the employer) appeals from the district court's order which reversed the hearing examiner's decision.

We reverse.

## ISSUES

The employer presents the following issues for our review:

1. The District Court applied an incorrect standard or rule and improperly reweighed the evidence presented at the contested [case] hearing.

2. The Hearing [Examiner's] determination that [the employee] had engaged in unsanitary or injurious practices contrary to W.S. § 27–14–407 and thus was not entitled to benefits[ ] was supported by substantial evidence.

## FACTS

It is undisputed that the little finger on the employee's left hand was crushed on March 31, 1994, while the employee was at work. He was taken to the emergency room where he was given pain killing medications and a tetanus shot. Later that day, an orthopaedic surgeon determined that immediate surgery was required.

During the surgery, the surgeon placed two surgical pins in the employee's finger to stabilize the joint. Tube gauze and an extension splint were placed over the finger after surgery to protect it. No complications were noted as a result of the surgery. The following day, the employee returned to the hospital to have his surgical dressing changed. He complained that he did not have any circulation in his finger due to the pressure of the postoperative dressing, so the dressing was changed. The next day, the employee redressed his wound himself, trying to ease the continuing pain. He also applied a topical coating of honey to his injury.

On April 4, 1994, the employee returned to work even though he had not yet been released by his surgeon to do so. The employee bought a supply of clean gloves and trimmed the protruding ends of the surgical pins by about an eighth of an inch to make it easier for him to get his gloves on and off.

On April 7 and April 12, 1994, the employee visited the surgeon's office. At both visits, his wound was "benign," but the surgeon did note that the employee had been using honey on his injury. The surgeon instructed the employee to wear his splint and not put honey on the wound.

On April 24, 1994, the employee was not wearing his splint when his wife accidentally hit his finger. The employee's finger became

progressively painful and swollen. Three or four days later, in an attempt to relieve the pain, the employee pulled both pins out of his finger with a pair of pliers. Despite having pain and swelling, the employee did not seek immediate medical treatment. When the employee did see a doctor approximately nine days after his finger had been struck, he had to have surgery because of extensive infection and the damage done to his finger. The finger had swollen to nearly four times its normal size, and it was a "purplish red" color. At the employee's insistence, the surgeon amputated the employee's finger during that surgery.

The employee applied for and received benefits under the provisions of the Wyoming Worker's Compensation Act. The employer subsequently objected to any benefits being paid to the employee after May 3, 1994, claiming that the employee had engaged in unsanitary or injurious practices which imperiled his recovery. After holding a contested case hearing, the hearing examiner concluded that the employee was not entitled to receive benefits for the treatment of the infection or for the amputation, finding that the employee had knowingly engaged in an unsanitary or injurious practice which tended to imperil or retard his recovery.

The employee sought review of the hearing examiner's decision in the district court. The district court reversed the hearing examiner's decision, concluding that the employer had failed to meet and carry its burden of proof. The employer appeals from the district court's decision.

## DISCUSSION

The employer contends that substantial evidence supported the hearing examiner's determination and that the district court improperly reversed the hearing examiner's decision. The employee maintains that the employer failed to meet its burden of proving that the employee forfeited his claim.

When we review an administrative order, we are not compelled to accept any of the conclusions reached by the district court. *State ex rel. Wyoming Workers' Compensation Division v. Fisher,* 914 P.2d 1224, 1226 (Wyo. 1996). Instead, we review the case as if it had come directly to this Court from the agency. *Id.*

> Our task is to examine the entire record to determine whether substantial evidence supported the hearing examiner's findings. We will not substitute our judgment for that of the hearing examiner when substantial evidence supports his decision. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions.

*Latimer v. Rissler & McMurry Co.,* 902 P.2d 706, 708–09 (Wyo.1995) (citations omitted). We do not, however, defer to an agency's conclusions of law. "Instead, if the 'correct rule of law has not been invoked and correctly applied, ... the agency's errors are to be corrected.'" *Thunder Basin Coal Company v. Study,* 866 P.2d 1288, 1291 (Wyo.1994) (quoting *Devous v. Wyoming State Board of Medical Examiners,* 845 P.2d 408, 414 (Wyo. 1993)).

Although the burden of establishing that a worker's compensation claim has been forfeited rests squarely on the employer, *Kilburn Tire v. Meredith,* 743 P.2d 874, 876 (Wyo.1987), the party who appeals from an administrative determination has the burden of proving the lack of substantial evidence to sustain the agency's ruling. *Jaqua v. State ex rel. Wyoming Workers' Compensation Division,* 873 P.2d 1219, 1221 (Wyo.1994). We construe the forfeiture mandate strictly due to its harshness. *Kilburn Tire,* 743 P.2d at 876.

The substantive issue in this case is whether the hearing examiner properly applied WYO. STAT. § 27–14–407 (1991) to the facts in this case. Section 27–14–407 provides:

> If an injured employee knowingly engages or persists in an unsanitary or injurious practice which tends to imperil or retard his recovery, or if he refuses to submit to medical or surgical treatment reasonably essential to promote his recovery, he forfeits all right to compensation under this act. Forfeiture shall be determined by the hearing examiner upon application by the division or employer.

The unambiguous language of § 27–14–407 requires that a showing be made that an employee has engaged in some action or activity which "tends" to impact his recovery. The word "tend" is defined in BLACK'S LAW DICTIONARY 1315 (5th ed.1979) in the following way:

> To have a leaning; serve, contribute, or conduce in some degree or way, or have a more or less direct bearing or effect; to be directed as to any end, object, or purpose; to have a tendency, conscious or unconscious, to any end, object or purpose.

Regarding the forfeiture statute, we have said:

> The actions required of an injured claimant necessary to invoke a forfeiture order by the district court have been explained previously by this court as follows:
>
> > "The 'practice' must be something more than an occasional thoughtless or careless act, and must be shown to have been persisted by the injured workman. Among definitions of the verb 'persist' we find the following: '... To continue steadily and firmly in some state, course of action, or pursuit, especially in spite of opposition, remonstrance, etc.' [Citation.]" *In re Hibler,* 37 Wyo. 332, 341, 261 P. 648, 651 (1927).
>
> Section 27–12–412 [now § 27–14–407] plainly requires the finder of fact, in the instant case the district court, to initially determine whether the injured claimant has acted in conformity with the above definitions. If so, the district judge is to declare a forfeiture of the claim.

*Kilburn Tire,* 743 P.2d at 876.

After holding a hearing, the hearing examiner rendered the following findings of fact:

1. [The employee] experienced a work-related injury on March 31, 1994.

2. [The employee's] initial treatment at the WestPark Hospital Emergency Room consisted of suturing pieces of skin on the left little finger, and the administration of pain killing medications and a tetanus shot. Later that day, [the employee] was examined by ... an orthopedic surgeon, who determined immediate surgery was necessary, and who inserted two stabilization pins into the finger, cross-wise through the knuckle joint. Said pins protruded approximately 1/4 inch beyond the skin of the finger. [The surgeon] also wrapped the finger in gauze and placed an aluminum splint or sheath on it.

. . . .

4. [The employee] usually wore the splint, in accordance with his doctor[']s instructions, although at times when he was not working, he did not wear it. While at work, he wore work gloves in order to protect the finger, but also cut out the top of the little finger of the left glove to accommodate the wearing of the splint.

. . . .

6. On April 7, 1994, [the employee] quit taking antibiotics. Said prescription would have taken him through April 10, 1994, if he had taken them as his doctor ordered.

. . . .

10. [The employee] stopped wearing his splint at work approximately April 20, 1994.

11. [The surgeon] instructed [the employee] to wear his splint until the pins were removed.

12. On April 24, 1994, while the finger was unprotected by the sheath, [the employee's] wife accidently hit the injured hand. The finger immediately swelled up and became painful, and after three days of the pain and swelling, [the employee] pulled the pins out of his finger himself, using a pair of pliers. At this time, he had a scheduled appointment with [the surgeon] for five days in the future, which was later rescheduled.

13. After removing the gauze and splint and cleaning his finger, [the employee] saw [the surgeon] on May 3, 1994, who scheduled surgery the next day to address the obvious infection of the finger. A decision was made at that time to amputate the little finger.

. . . .

16. [The employee's] complication of his original injury, in the form of an infection, which necessitated the amputation, was caused by the unintentional bumping of the pin by his wife while at church, and

not by the removal of the pins or the early cessation of antibiotics. In this regard, the Hearing Examiner finds [the surgeon's] opinions ... more persuasive than the statement of [the physician who reviewed the employee's medical records].... The most satisfactory explanation for what caused the infection, was that it was caused when the bacteria on the pin were driven under the subcutaneous tissues when the finger was bumped by [the employee's] wife....

17. It is uncertain if the infection, which was caused by the bumping, would not have occurred if [the employee] had been wearing his sheath as instructed by his doctor, in that [the employee's] finger was apparently bumped on the side, where the pins protruded and not on the top, where the sheath would have protected it.

The hearing examiner made the following conclusions of law:

1. The unsanitary or injurious practice would not be [the employee's] early return to work, his trimming of the pins, or even his failure to wear his splint, in that it appears that since the sheath covered only the top of the finger, and the pins were on the side, that he was bumped on the side and the sheath wo[uld]n't have protected it anyway. This behavior, although questionable, did not imperil or retard his recovery.

2. The [employee's] self-help removal of the pins in his left little finger and the [employee's] failure to seek medical treatment after the bumping does rise to the level of both "knowingly engaging" and "persisting" in a more than occasionally thoughtless or careless unsanitary or injurious act. Further, this conduct indicated a continuously steady and firm course of action. It is more likely than not that ... waiting [nine] days [to get treatment] imperiled his recovery from the original injury.

3. Since the Hearing Examiner concludes as a matter of law that the "injurious practice" statute prohibits [the employee] from recovering benefits for the subsequent infection and amputation, the Hearing Examiner need not consider the other objections raised.

4. [The employee] is not entitled to benefits for the treatment of the subsequent infection in his finger, and the amputation thereof.

■ The employee argues that the issue of whether he "persisted" in a course of action which "tended" to imperil or impede his recovery is one which requires expert medical testimony and that such testimony is absent from the record.

We have held that medical testimony is not required if it is not essential to establish a causal connection between the accident and the injury. We also have held that the finder of fact is not necessarily bound by the medical evidence. On the other hand, we have acknowledged that where a medical question is complex, and the fact finding must be done in a realm that appropriately relies upon technical medical knowledge and expertise, medical testimony should not be ignored.

*Forni v. Pathfinder Mines,* 834 P.2d 688, 693 (Wyo.1992) (citations omitted). We have also held: " '[W]here injuries are so immediately and directly or naturally and probably the result of an accident, medical evidence is not essential to find a causal connection.' " *Hansen v. Mr. D's Food Center,* 827 P.2d 371, 373 (Wyo.1992) (quoting *Colorado Fuel & Iron Corporation v. Frihauf,* 58 Wyo. 479, 135 P.2d 427, 434 (1943)).

Medical evidence was introduced which established that, when the employee visited the surgeon on April 7 and April 12, 1994, his finger appeared to be "benign" and well on its way to recovering. The physician who reviewed the employee's medical records stated in a letter which was introduced into evidence:

I had the opportunity to review medical records on [the employee]. Despite a significant injury, which would have left him with an imperfect finger, *I think that his lack of compliance to the program outlined by the operating physician contributed in part to his end results.* I base this on review of records provided to me in your letter of October 13.

(Emphasis added.) The employee's discharge orders after his finger was amputated included the following notes:

> Medications—.... He is not to use the hand for any reason. He is not to disturb the dressings which was a major problem with the care prior to the surgery.... Patient has been specifically instructed not to treat his wound with honey since this is quite likely a causative factor in his developing severe infection earlier. I have also given his wife instructions prior to his discharge about patient's restrictions and my desire for him not to do anything with this hand until we are sure that the wound is healing well. ***Whether or not the patient will follow our instructions remains to be seen. There [were] significant problems with compliance along with the first injury.***

(Emphasis added.) Additionally, while the employee's acts of trimming the surgical pins, treating his injury with honey, not taking all his antibiotics, returning to work although his surgeon had not released him to do so, failing to wear the splint at all times, and pulling the pins out of his finger were not in and of themselves injurious practices, they demonstrated a pattern of conduct by the employee which supported the hearing examiner's conclusion that the employee's failure to seek medical attention was part of a persistent pattern of activity.

The employee decided not to seek medical attention even though he was in pain and his finger was red and swollen. This evidence not only supported the conclusion that the employee "persisted" in a course of action which "tended" to imperil or impede his recovery but also supported the finding that his actions actually impeded and imperiled his recovery.

Medicine is not so complicated that an average person cannot understand that infection is a possibility after an operation, that he should seek immediate medical attention when signs of infection arise, and that, if left untreated, a severe infection in a finger could lead to the finger being amputated. Common sense tells us that we must consult with a doctor in a timely manner when an injury, which seems to be healing normally, becomes red and very swollen after it has been bumped.

Substantial evidence supported the hearing examiner's conclusion that the employer had met its burden of proving that § 27–14–407 applied to preclude further benefits from being paid to the employee. The district court, therefore, erred when it reversed the hearing examiner's order.

Reversed.