Forest B. DUNNING, Appellant
(Petitioner),

v.

Leo ANKNEY;  Tana Ankney;  William
Barbula;  Arline Barbula;  and Bernice
Turley, Appellees (Respondents).

No. 96–186.

Supreme Court of Wyoming.

April 9, 1997.

Timothy S. Tarver, Sheridan, for Appellant.

Robert W. Connor, Jr. and Sheryl S. Lansing of Connor & Wendtland, Sheridan, for Appellees Leo & Tana Ankney.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

MACY, Justice.

The Sheridan County Board of County Commissioners (the board) denied Appellant Forest Dunning's application for the establishment of a private road. Dunning appealed to this Court after the district court affirmed the board's decision.

We reverse and remand.

## ISSUES

Dunning presents two issues on appeal:

A. Did the Board of County Commissioners unlawfully withhold action to establish a private road by imposing requirements upon Appellant Forest B. Dunning which are in excess of their legal authority?

B. Should Findings of Fact 11 and 12f and 12g be set aside since they are unsupported by substantial evidence?

## FACTS

On October 4, 1995, Dunning applied for a private road across several landowners' property because his property was landlocked and did not have a legally enforceable means of access. Dunning gave notice to the parties who owned the land over which his proposed

road would cross, and Appellees Leo Ankney, Tana Ankney, William Barbula, Arline Barbula, and Bernice Turley objected to Dunning's application.[1] A contested case hearing was held in November 1995 before a hearing examiner and the board.

After the hearing had concluded, the board entered its findings of fact and conclusions of law which stated in pertinent part:

11) Petitioner did not "in good faith" seek the establishment of a private road.

12) Petitioner's lack of good faith is evidenced as follows:

a) Petitioner intentionally failed to provide Notice of Intent to Apply for a Private Road to the following adjoining landowners: John C. and Elizabeth Dewey, Trustees for the Dewey Family Trust[;] Mike Kukuchka[;] State of Wyoming[;] Fort Union Coal Company.

b) Petitioner's intentional failure to provide such notice would prohibit any appointed viewers and appraisers from considering routes across those other adjoining lands.

c) Petitioner has thereby constrained viewers and appraisers to consider only routes which cross at least five neighboring properties, some routes which cross properties at least twice.

d) Petitioner's selective notice further requires any appointed viewers and appraisers to consider only routes which extend at least three miles in length across neighboring properties.

e) Petitioner's selective notice has foreclosed any appointed viewers and appraisers from considering routes of one-half mile or one mile in length, which routes would cross only one neighboring property.

f) Petitioner's selection of a route was based on what was reasonably convenient only to Petitioner and not also to adjacent landowners.

g) Petitioner did not complete his study of alternative routes until he had selected

his desired route and submitted his Petition.

On the basis of these findings of fact, the board concluded that Dunning had not met his "responsibility of studying alternative routes and asking in good faith for one that is reasonable and convenient." The board, therefore, denied Dunning's application. Dunning appealed to the district court, and that court affirmed the board's decision. Dunning subsequently appealed to this Court.

**STANDARD OF REVIEW**

In this case, we must review the findings of fact and conclusions of law which were issued by the board. We review an administrative order as if it had come directly to this Court from the agency. *State ex rel. Wyoming Workers' Compensation Division v. Fisher,* 914 P.2d 1224, 1226 (Wyo. 1996). We are not compelled to accept the conclusions reached by the district court. *Id.*

Our task is to examine the entire record to determine whether substantial evidence supported the administrative agency's findings of fact. *Celotex Corporation v. Andren,* 917 P.2d 178, 180 (Wyo.1996). We will not substitute our judgment for that of the agency when substantial evidence supports its decision. *Id.* "Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions." *Latimer v. Rissler & McMurry Co.,* 902 P.2d 706, 709 (Wyo.1995). "We do not, however, defer to an agency's conclusions of law." *Celotex Corporation,* 917 P.2d at 180. "Instead, if the 'correct rule of law has not been invoked and correctly applied, ... the agency's errors are to be corrected.'" *Thunder Basin Coal Company v. Study,* 866 P.2d 1288, 1291 (Wyo.1994) (quoting *Devous v. Wyoming State Board of Medical Examiners,* 845 P.2d 408, 414 (Wyo. 1993)).

1. The Barbulas and Ms. Turley did not appear in this appeal. Jerald Seifert and Mary Seifert also objected to the establishment of the road and were originally involved in this dispute. During the pendency of this appeal, however, they sold their property to Dunning and were dismissed as parties to this case.

## DISCUSSION

Dunning asserts that the board unlawfully imposed requirements on him which were in excess of the board's statutory authority. He also claims that findings of fact 11, 12f and 12g were not supported by substantial evidence. In findings of fact 11 and 12, the board found that Dunning did not fulfill the requirements for establishing a private road because he did not act in good faith. The board decided that, in order to comply with the good faith requirement, Dunning should have given notice to everyone who owned or occupied property which adjoined his property even though his proposed road would pass over only some of the properties.

■■ WYO. STAT. § 24–9–101 (1993) governs the establishment of private roads: [2]

Any person whose land has no outlet to, nor connection with a public road, may apply in writing to the board of county commissioners of his county for a private road leading from his premises to some convenient public road. At least sixty (60) days prior to applying to the board, the applicant shall give notice in writing to the owner, resident agent or occupant of all lands over which the private road is applied for, of his intent to apply for a private road.... At the hearing, all parties interested may appear and be heard by the board as to the necessity of the road and all matters pertaining thereto. Upon the hearing of the application, whether the owner or others interested appear or not, if the board finds that the applicant has complied with the law and that the private road is necessary, the board shall appoint three (3) disinterested freeholders and electors of the county, as viewers and appraisers, and shall cause an order to be issued directing them to meet on a day named in the order on the proposed road, and view and locate a private road according to the application therefor, and to assess damages to be sustained thereby. If for any reason the viewers and appraisers are unable to meet at the time set by the board to view the proposed road, they may fix some other date, but shall give notice in writing to the owner, resident agent or occupant of the lands over which the road is proposed to be laid of the time and place where the viewers will meet, at least ten (10) days before viewing the road, at which time and place all persons interested may appear and be heard by the viewers. Before entering upon their duties the viewers shall take and subscribe to an oath that they will faithfully and impartially perform their duties under their appointment as viewers and appraisers. The viewers shall then proceed to locate and mark out a private road in accordance with the application or in such other manner and location they deem appropriate, provided the location of the road shall not be marked out to cross the lands of any person whose lands were not described in the application and who was not given notice of the application. The proposed road shall not exceed thirty (30) feet in width from a certain point on the premises of the applicant to some certain point on the public road, and shall be located so as to do the least possible damage to the lands through which the private road is located. The viewers shall also at the same time assess the damages sustained by the owner over which the road is to be established and make full and true returns, with a plat of the road to the board of county commissioners.

■■■ An administrative agency has only those powers which are expressly provided by statute. *Wagoner v. State Department of Administration and Information*, 924 P.2d 88, 90–91 (Wyo.1996). In the context of § 24–9–101, this Court expressly stated:

Neither the county commissioners nor the district court [is] at liberty to graft onto the statute that which [it] think[s] ought to be included or to delete that which [it]

---

**2.** In *Lindt v. Murray*, 895 P.2d 459 (Wyo.1995), this Court noted that § 24–9–101 is not up to its assigned task of providing a workable procedure for the establishment of private roads. We stated: "Legislative reassessment is imperative." 895 P.2d at 462 n. 2. Unfortunately, the legisla-

ture has not acted on our suggestion. We, therefore, reiterate that the legislature needs to amend this statute to make it capable of addressing "the complexities associated with development and progress in an essentially rural state." *Id.*

find[s] inconvenient. Neither they nor we have authority to add to or delete from a statute.

*McGuire v. McGuire,* 608 P.2d 1278, 1287 (Wyo.1980). We also stated that an application for a private road under § 24–9–101 must be brought in good faith. 608 P.2d at 1286.

> [T]he applicant must make his request in good faith and the route chosen must be reasonable and convenient but, the route chosen does not have to be the most convenient and reasonable route possible taking into account all possible routes. It must be simply a reasonable and convenient route.

*Id.* (footnote omitted).

█ The plain language of § 24–9–101 requires an applicant to give notice to only the persons who own or occupy the land over which the proposed road will pass. The board improperly used the good faith language in *McGuire* to require Dunning to give notice to all adjoining landowners even though the proposed road would pass over only some of the land. That expansion of the statutory requirements was improper and was, in fact, expressly forbidden by this Court in the *McGuire* decision.

█ The board found that, by failing to give notice to all adjoining landowners, Dunning effectively constrained the viewers and appraisers from considering routes which would cross the other adjoining landowners' property. It is true that under § 24–9–101 the viewers and appraisers must locate the road within the lands of the property owners who were given notice. The legislature obviously intended to allow the applicant to choose the general location of the road. Section 24–9–101; *see also McGuire,* 608 P.2d at 1285. The viewers and appraisers must establish the exact location of the road so that it will do the least possible damage to the land through which it passes. Section 24–9–101; *McGuire,* 608 P.2d at 1286. An applicant may propose alternative routes if he wishes, but he is not obligated to do so. *See Carney v. Board of County Commissioners of Sublette County,* 757 P.2d 556 (Wyo.1988). When the applicant proposes alternative routes, he must give notice to the persons

who own or occupy the property over which his proposed roads will pass. In this case, Dunning gave notice in accordance with the directives of § 24–9–101, and the board erred by ruling that he should have given notice to all adjoining landowners.

Dunning also argues that findings of fact 12f and 12g were not supported by substantial evidence. In finding of fact 12f, the board stated that Dunning had not acted in good faith because his "selection of a route was based on what was reasonably convenient only to [him] and not also to adjacent landowners."

█ Under the language of § 24–9–101 and the case law interpreting the statute, an applicant is obligated to select a "reasonable and convenient route." *McGuire,* 608 P.2d at 1286. The chosen route, however, does not have to be the most reasonable and convenient route available. *Id.; see also Carney,* 757 P.2d at 561. Furthermore, a landlocked property owner cannot be forced "to choose a wholly illogical, uneconomic, and unproductive road." *Ferguson Ranch, Inc. v. Murray,* 811 P.2d 287, 290 (Wyo.1991).

█ Dunning testified at the hearing that he considered many routes and had actually studied seven different routes in the course of selecting the road that he was applying for. He considered the impact of the different routes on the property over which they would cross. Dunning testified that, in choosing his route, he tried to avoid crossing valuable land such as hayfields and homesites in order to mitigate the damage to the property. He also testified that he chose an existing road because it would cause less damage to his neighbors' land than building a new road over virgin land would cause. In addition to those considerations, he also looked at whether each proposed route would provide effective year-round access to his property.

The route which Dunning chose was considerably longer than some of the other routes that he contemplated. It, however, followed a road which had existed for a very long time and which had historically been used to access his property. Dunning's pro-

posed road crossed land which was generally less valuable, thereby minimizing the damage to his neighbors' property. Furthermore, unlike some of the other possible routes, the proposed road would provide Dunning with year-round access to his property and allow him to make full use of his property. Some of the alternative routes, although they were shorter, would not have been easily accessible in poor weather and would have entered his property at locations where stone cliffs and timber barred him from reaching the remainder of his property. Dunning was not required to accept one of these shorter routes because, under Wyoming law, neither the board nor the neighboring property owners could force Dunning to choose an illogical, uneconomic, or unproductive route. *Ferguson Ranch, Inc.*, 811 P.2d at 290.

Even applying our lenient standard of reviewing administrative agencies' findings of fact, we do not detect substantial evidence to support the board's determination that Dunning's "selection of a route was based on what was reasonably convenient only to [him] and not also to adjacent landowners." Although Dunning's chosen route did cross a number of properties and was considerably longer than other possible routes were, the evidence reveals that Dunning took his neighbors' interests into account and that his chosen route was reasonable and convenient.

In finding of fact 12g, the board also found that Dunning did not act in good faith because he did not complete his study of the alternative routes before he selected his desired route and submitted his application. Under the *McGuire* case, a petitioner is required to study alternative routes. 608 P.2d at 1286. At the hearing, Dunning testified that he had studied alternative routes before he chose and applied for a road but that he did not document the information until shortly before the hearing was held. The evidence at the hearing did not contradict Dunning's testimony that he had studied the alternative routes, and an applicant is not required to document his study before making his application. Substantial evidence, therefore, does not support the board's finding.

The board's conclusion that Dunning "failed to meet his responsibility of studying alternative routes and asking in good faith for one that is reasonable and convenient" was not supported by adequate findings of fact. Since that was the only basis for the board's decision to deny Dunning's application, the board is directed, upon remand, to appoint viewers and appraisers to locate the road and determine damages in accordance with § 24-9-101.

Reversed and remanded.