Steven A. and Rebecca L. MARTENS,
Petitioners (Plaintiffs),

v.

JOHNSON COUNTY BOARD OF
COMMISSIONERS, Respondent
(Defendant),

L.A. Wuthier and Lucile Wuthier, Trustees
of the L.A. Wuthier Trust and the Lucile
Wuthier Trust, Defendants/Intervenors,

and

Creed Law, Clarene Law, and L–LM
Partnership, a Wyoming Part-
nership, Intervenors.

No. 97–90.

Supreme Court of Wyoming.

Feb. 24, 1998.

Katherine L. Mead, Jackson, for Appellants Steven A. and Rebecca L. Martens.

Greg L. Goddard, Johnson County Attorney, Buffalo (argued); Theodore E. Lauer, Director, and James Kaste, Student Intern, of the Prosecution Assistance Program at the University of Wyoming, Laramie, for Appellees Board of County Commissioners of Johnson County.

Dennis Kirven, Buffalo, for Intervenors L.A. Wuthier and Lucille Wuthier as Trustees of the L.A. Wuthier Trust and the Lucille Wuthier Trust.

Before TAYLOR, C.J., and THOMAS, GOLDEN and LEHMAN, JJ., and DONNELL, District Judge.

GOLDEN, Justice.

Appellants Steven and Rebecca L. Martens (Martens) petitioned the Board of County Commissioners of Johnson County (Board) to establish a private road in Johnson County to their landlocked property located in Johnson County. The Board ordered that the road be established in Sheridan County, and Martens appeal this decision as well as the Board's requirements that they pay for surveys prior to hearing their petition and that they notify landowners whose property was not crossed by their proposed roads.

We reverse and remand with directions to appoint viewers and appraisers to map a road consistent with the Martens' petition to establish a private road in Johnson County.

## ISSUES

The Martens present these issues:

I. Whether the County Commission acted in an arbitrary and capricious manner when it required two surveys to be conducted in order to make a Petition for Establishment of a Private Road?

II. Whether the County Commission unlawfully imposed requirements upon the Appellants in its Interim Order which are in excess of their legal authority?

III. Whether the County Commission acted in excess of its authority when it instructed the viewers and appraisers that they could establish a private road to the Appellants' property in another county?

IV. If the Court finds that the County Commission acted outside of its jurisdiction in establishing a private road in an adjoining county, is the petitioner entitled to a credit for costs paid by him for services of the viewers and appraisers, and for reimbursement of costs incurred for the preparation of two needless surveys?

The Board presents these issues:

I. Is the Board of County Commissioners of Sheridan County a proper party to this proceeding for judicial review of administrative action?

II. Did the Board of County Commissioners of Johnson County act within its statutory authority when it located a private road in Sheridan County?

III. Did the Board of County Commissioners of Johnson County act within its statutory authority when it stayed the Martens' application for a private road until the Martens gave notice to additional landowners?

IV. Is it within the permissible bounds of discretion for the Board of County Commissioners to require a survey of a proposed private road before accepting an application and ordering a hearing thereon?

V. Is it appropriate for this court to decide the issue of costs when the issue was not litigated in the action, before the Board of County Commissioners, and Appellants have not presented a cogent legal theory of recovery?

Appellees, L.A. Wuthier and Lucille Wuthier, Trustees of the L.A. Wuthier Trust and Lucille Wuthier Trust (Wuthiers) present these issues:

A. Whether the Board of County Commissioners for Sheridan County have standing to appeal?

B. Did the Board of County Commissioners for Johnson County, Wyoming, have authority to locate a private roadway in Sheridan County, Wyoming, under Wyo. Stat. § 24–9–101?

C. Did the Board of County Commissioners for Johnson County, Wyoming, properly approve a report of the viewers locating a road in Sheridan County, Wyoming?

## FACTS

In February of 1994, Martens purchased unimproved real property in Johnson County. The property is bordered on the west by heavily timbered U.S. Forest Service lands of the Bighorn National Forest, on the north by the Sheridan–Johnson County line, the North Piney Creek and steep, rocky, mountainous terrain, and on the south by steep, mountainous terrain. The Martens had no access to the property and, in June of 1994, they applied to the Board to establish a private road to their property pursuant to Wyo. Stat. § 24–9–101. The county attorney of Johnson County required the Martens to survey the proposed route before the Board would hear the petition despite the fact that the plain language of the statute did not require that a survey be performed until such time as the road was located by the viewers and appraisers. The Martens identified two routes and conducted two surveys of those routes which crossed the property of Louis Aime Wuthier and Lucile B. Wuthier. They properly notified these landowners. These proposed routes involved only lands in Johnson County.

In its first consideration, the Board denied the petition based upon allegations by adjoining landowners that the Martens' property was not landlocked because easements across the land of Creed and Clarene Law provided access. Martens tell us that a court order declared that the alleged easements were invalid and did not provide access to the property. The Martens again applied for the establishment of a private road in Johnson County, and the parties stipulated that the property was landlocked. The Wuthiers again objected to the proposed route on the grounds that the Martens had not adequately studied alternative routes and had made an application in bad faith because the Martens failed to recognize the historical and archaeological significance of the Wagon Box Fight Site [1] over which the proposed roads would pass.

A hearing was held by the Board on January 15, 1996, and evidence was presented on the reasonableness of locating the road on the lands of the Wuthiers, across the Wagon Box Fight Site, and on the existence of alternative routes both in Johnson County and in Sheridan County. On January 18, 1996, the Board ordered the Martens to give notice of their intent to establish a private road to a number of landowners whose properties were not crossed by the Martens' proposed roadway but across whose lands potential alternate routes existed. The Board also directed that the proceedings be stayed until the Martens amended their application to include other landowners "whose lands potentially provide a site for a private road." One of those landowners is the L–LM Partnership which does own land in Sheridan County but does not own property in Johnson County. The Martens objected but complied with the interim order because it was not appealable.

Viewers and appraisers were appointed on March 21, 1996, to establish a private road, and a hearing was held on May 7, 1996. Despite objections from many of the property owners in Sheridan County, the county attorney and the Board instructed the viewers and appraisers that they were free, if they so chose, to establish a private road in Sheridan County. On June 18, 1996, the Martens received the recommendation of the viewers and appraisers which established the private road to the Martens' landlocked property from a public road in Sheridan County. Their report recited that the viewers and appraisers met on seven separate days and visited the scene and considered alternative routes for the road. The viewers and appraisers determined that the road should be located across the lands of the Laws in Sheridan County, provided a legal description and a plat of the road, and assessed damages. This proposed road was not one of the two proposed by the Martens. The Martens also paid for a survey of this proposed road.

On June 28, 1996, the L–LM Partnership and Creed Law and Clarene Law filed an objection to the report of the viewers and appraisers, reiterating their claim of lack of jurisdiction by the Board and effect on the Law lands and objecting to the measure of damages assessed. On December 20, 1996, the Board approved the report of the viewers and appraisers and declared the private road established. In separate actions, Sheridan County and the Martens filed a petition for review in the district court; and at the request of the Martens, the district court certified this case to this Court. This Court consolidated the two cases; however, on August 6, 1997, this Court, on its own motion, dismissed the suit by the Sheridan County Board of County Commissioners. Consequently, it is not necessary to address appellees' arguments concerning Sheridan County's standing in this opinion.

## DISCUSSION

■ Our scope of review of agency orders is defined by WYO. STAT. § 16–3–114(c) (1997), which in pertinent part states:

---

1. The Wagon Box Fight was a dramatic battle between woodcutters and soldiers from Fort Phil Kearny and the Sioux Indians which occurred on August 2, 1867. Led by Red Cloud, Crazy Horse, and High–Back–Bone, Indian forces surrounded the military escort for the woodcutters and waged a battle for several hours. The military escort arranged wagon boxes as a fragile fortification and fought from behind them until help arrived and the Indians withdrew. Their survival somewhat erased the stigma and humiliation of an earlier disastrous military defeat known as the Fetterman Massacre. T.A. LARSON, HISTORY OF WYOMING, 28–29 (1965).

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. * * * The reviewing court shall: * * *

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.

*Reaves v. Riley*, 782 P.2d 1136, 1138 (Wyo. 1989). No deference is given to an agency's conclusions of law. If the correct rule of law has not been invoked and correctly applied, then we correct the agency's errors. *Dunning v. Ankney*, 936 P.2d 61, 63 (Wyo.1997).

WYO. STAT. § 24–9–101 (1993) governs the establishment of private roads:

Any person whose land has no outlet to, nor connection with a public road, may apply in writing to the board of county commissioners of his county for a private road leading from his premises to some convenient public road. At least sixty (60) days prior to applying to the board, the applicant shall give notice in writing to the owner, resident agent or occupant of all lands over which the private road is applied for, of his intent to apply for a private road. . . . At the hearing, all parties interested may appear and be heard by the board as to the necessity of the road and all matters pertaining thereto. Upon the hearing of the application, whether the owner or others interested appear or not, if the board finds that the applicant has complied with the law and that the private road is necessary, the board shall appoint three (3) disinterested freeholders and electors of the county, as viewers and appraisers, and shall cause an order to be issued directing them to meet on a day named in the order on the proposed road, and view and locate a private road according to the application therefor, and to assess damages to be sustained thereby. If for any reason the viewers and appraisers are unable to meet at the time set by the board to view the proposed road, they may fix some other date, but shall give notice in writing to the owner, resident agent or occupant of the lands over which the road is proposed to be laid of the time and place where the viewers will meet, at least ten (10) days before viewing the road, at which time and place all persons interested may appear and be heard by the viewers. Before entering upon their duties the viewers shall take and subscribe to an oath that they will faithfully and impartially perform their duties under their appointment as viewers and appraisers. The viewers shall then proceed to locate and mark out a private road in accordance with the application or in such other manner and location they deem appropriate, provided the location of the road shall not be marked out to cross the lands of any person whose lands were not described in the application and who was not given notice of the application. The proposed road shall not exceed thirty (30) feet in width from a certain point on the premises of the applicant to some certain point on the public road, and shall be located so as to do the least possible damage to the lands through which the private road is located. The viewers shall also at the same time assess the damages sustained by the owner over which the road is to be established and make full and true returns, with a plat of the road to the board of county commissioners.

In the few decisions in which we have interpreted WYO. STAT. § 24–9–101, which became effective in 1895, the following rules have emerged. This statute provides that "[a]ny person whose land has no outlet to, nor connection with a public road" may apply for a private road to connect his premises to a convenient public road. The statute is rooted in the concept of a private way of necessity as stated in Section 32 of Article 1 of the Wyoming Constitution:

Private property shall not be taken for private use unless by consent of the owner, except for private ways of necessity * * *.

*Reaves*, 782 P.2d at 1137; *Snell v. Ruppert*, 541 P.2d 1042, 1045–46 (Wyo.1975); *see also Meyer v. Colorado Cent. Coal Co.*, 39 Wyo.

355, 271 P. 212 (1928) (recognizing that the legislature can establish procedure for creating a private way). In *McIlquham v. Anthony Wilkinson Live Stock Co.*, 18 Wyo. 53, 104 P. 20 (1909), we said that the purpose of a way of necessity was to allow for the use and enjoyment of one's land. We also said that the right to a way "is an incorporeal right appurtenant to the estate granted, and not a personal right or one incident to personal property." *McIlquham*, 18 Wyo. at 63, 104 P. at 22; *Reaves*, 782 P.2d at 1137. Our *Reaves* decision held that the same principle applies under this statute, and because the common purpose of either a common law way of necessity or a statutory private road is to allow the use and enjoyment of specific property, the right to either is incident to the ownership of the property. *Reaves*, 782 P.2d at 1137.

We have recognized that the procedure to establish a private road set forth in the statutes requires a due process hearing because of the property rights that are involved. *Gold v. Bd. of County Comm'rs of Teton County*, 658 P.2d 690, 695–96 (Wyo. 1983). A due process hearing must be provided by the board of county commissioners, and the affected landowner must be afforded a right to appear before the board to contest both the taking and the damage awards determined by the appraisers. *Id.; Carney v. Bd. of County Comm'rs of Sublette County*, 757 P.2d 556, 559–560 (Wyo.1988).

In ascertaining the legislative intent from the language of the statute, we have noted that the legislature intended the procedure under the statute to provide in a local forum a readily available, economically affordable, and time efficient method to obtain a means of access to property. *McGuire v. McGuire*, 608 P.2d 1278, 1288 (Wyo.1980). We have also stated that an application for a private road under Wyo. Stat. § 24–9–101 must be brought in good faith, and that it was the legislature's intent that convenience and reason should prevail in the establishment of roads, but that the route chosen does not have to be the most convenient and reasonable route possible. *Dunning*, 936 P.2d at 64–65; *Lindt v. Murray*, 895 P.2d 459, 462 (Wyo.1995); *McGuire*, 608 P.2d at 1286.

The legislature intended to allow the applicant to choose the general location of the road. *Dunning*, 936 P.2d at 65. The viewers and appraisers must establish the exact location of the road in a manner that minimizes damage to the land through which it passes. *Id.* An applicant may propose alternative routes, but is not obligated to do so. When the applicant proposes alternative routes, the plain language of § 24–9–101 requires an applicant to give notice to only the persons who own or occupy the land over which the proposed road will pass. *Id.* A landlocked property owner cannot be forced "to choose a wholly illogical, uneconomic, and unproductive road." *Id.* (quoting *Ferguson Ranch, Inc. v. Murray*, 811 P.2d 287, 290 (Wyo.1991)). Under the *McGuire* case, a petitioner is required to study alternative routes but is not required to document his study before making his application. *Dunning*, 936 P.2d at 66.

An administrative agency has only those powers which are expressly provided by statute. *Id.* at 64; *Wagoner v. State Dept. of Administration and Information*, 924 P.2d 88, 90–91 (Wyo.1996). In the context of § 24–9–101, this Court expressly stated:

> Neither the county commissioners nor the district court [is] at liberty to graft onto the statute that which [it] think[s] ought to be included or to delete that which [it] find[s] inconvenient. Neither they nor we have authority to add to or delete from a statute.

*Dunning*, 936 P.2d at 64–65 (quoting *McGuire*, 608 P.2d at 1287). We also stated that an application for a private road under § 24–9–101 must be brought in good faith.

> [T]he applicant must make his request in good faith and the route chosen must be reasonable and convenient but, the route chosen does not have to be the most convenient and reasonable route possible taking into account all possible routes. It must be simply a reasonable and convenient route.

*Dunning*, 936 P.2d at 65 (quoting *McGuire*, 608 P.2d at 1286) (footnote omitted).

In *Dunning,* we held that the board in that case had improperly used the good faith language in *McGuire* to require the applicant to give notice to all adjoining landowners even though the proposed road would pass over only some of the land. That expansion of the statutory requirements was improper and had, in fact, been expressly forbidden by this Court in *McGuire. Dunning,* 936 P.2d at 65. *Dunning* also is applicable to the issue of whether an applicant must provide a survey before consideration. We there held that an applicant does not have to document its study. *Id.* at 66.

██ In this case, the Martens point out the similarities between this Board's actions and the board's actions in *Dunning* and request reversal and remand based upon that decision. The Martens are, of course, correct. The Board improperly expanded the statutory requirements when it demanded that the Martens survey their proposed roads and notify additional landowners who would be impacted by possible routes before their application was accepted for consideration. The statute does not require that a survey be included in an application, and only landowners adjoining the Martens' proposed roads needed to be notified. The Board was then required to take evidence whether Martens had offered a reasonable route. The Board has not declared that proposed route unreasonable.

██ The Board contends, however, that, under the statute, one can reasonably infer authority to locate roads in another county if that best serves the interests involved. The Board is an administrative agency and has only those powers granted by the state constitution or statute. Although WYO. STAT. § 24–9–101 does not expressly state that the county's powers are limited to property in that county, in WYO. STAT. § 18–2–101(a)(iv) (1997), the legislature has acted to limit the Board's authority to property of the county. This Board has no authority to act in another county, and its actions impacting property in another county are without jurisdiction and void. Additionally, as Martens point out, *Dunning* established that the Board cannot consider and establish a road that is not proposed by the applicant. The

Martens never proposed a route through Sheridan County, and the Board erred in considering and establishing a road in another county.

██ The Wuthiers contend that the Board does not have the authority to establish a road through a national historic landmark. Under the statute, the Board does have the authority to do so. Martens must, of course, provide evidence that it is reasonable to do so. *See Dunning,* 936 P.2d at 66. The statute then directs the viewers and appraisers to mark out a road that minimizes damages. Any other protection for the landmark offered by federal law would also have to be considered by the Martens and the Board in determining whether the proposed road is reasonable.

██ Finally, the Martens request that the monies they have paid to establish an unlawful road should be credited and applied towards the additional expense that will be incurred when a second group of viewers and appraisers is appointed to carry out establishment of a lawful road. They also contend that they should be reimbursed for the expense of preparing the two needless surveys that the Board required before accepting their application for consideration. The Board argues that the Martens have not presented a legal theory upon which this Court can award costs and contends that resolution of this issue of costs is more appropriately decided by the Board. We order the Board to credit the amount already spent by the Martens and apply it towards any additional expense incurred in establishing the proposed road after a hearing determines if it is reasonable and convenient. We also order that the Martens be allowed to request reimbursement for the two needless surveys and present evidence to the Board. The Board should issue findings of fact and conclusions of law supporting its decision on the issue of reimbursement.

We reverse the order of the Board and remand for a hearing in accordance with the specific directions of this opinion.