2003 WY 62

**R.C.R., INC., a Wyoming corporation, Appellant (Petitioner),**

v.

**Robert E. DELINE and Annabelle M. Deline; Gary L. Palmer and Nancy J. Palmer; and Kirk Company, a Texas Partnership, Appellees (Respondents).**

No. 02–116.

Supreme Court of Wyoming.

May 22, 2003.

Judges Sullins and Burke sitting by appointment.

Kermit C. Brown of Brown & Hiser, LLC, Laramie, WY, Representing Appellant. Argument by Mr. Brown.

John A. MacPherson of MacPherson, Kelly & Thompson, LLC, Rawlins, WY, and John R. Vincent, Riverton, WY, Representing Appellees. Argument by Mr. MacPherson.

Before HILL, C.J., and GOLDEN, LEHMAN, and VOIGT, JJ., and DONNELL, D.J.

LEHMAN, Justice.

[¶ 1] We review the actions of the Carbon County Board of County Commissioners (Board), which were later affirmed by the district court, establishing a private road and assessing damages. We affirm.

### ISSUES

[¶ 2] Appellant R.C.R., Inc. (appellant) sets forth the following issues with which appellees Robert E. Deline, Annabelle M. Deline, Gary L. Palmer, Nancy J. Palmer, and Kirk Company (collectively appellees) ostensibly agree:

1. Was the Appellant wrongfully precluded from offering evidence relevant to the value of the property on February 13, 2001?

2. Did the Viewers improperly ignore damages to all of Appellant's land as required by *Lindt v. Murray*, 895 P.2d 459 (Wyo.1995)?

3. Did the Viewers improperly determine the damages to Appellant's land in contravention of the princip[le]s enunciated in *Lindt v. Murray, supra?*

4. Was the Appellant denied protections afforded it by the State of Wyoming and U.S. Constitutions?

### FACTS

[¶ 3] On September 16, 1997, pursuant to Wyo. Stat. Ann. §§ 24–9–101 to –103 (Lexis 1999),[1] appellees filed a Petition for Private Road. In addressing this petition, the Board appointed a hearing officer to preside over the proceedings. Beginning on August 19, 1998, a two-day evidentiary hearing was held, culminating with the Board entering findings of fact and an order establishing that 1) there was no outlet to a public road; 2) proper notice was given; and 3) a reasonable and convenient road had been proposed by appellees. The Board also appointed Stuart Quealy, Elmer Peterson, and James Espy as viewers and appraisers pursuant to Wyo. Stat. Ann. § 24–9–101.

[¶ 4] On January 15, 1999, the viewers and appraisers met on the property and ultimately filed their report with the Board on June 21, 1999. On September 27, 1999, a second evidentiary hearing was held before the Board. At this hearing, appellant did not object to the location of the road established by the viewers and appraisers because the location of the road was appellant's preferred route. Appellant did, however, contest the assessment of damages made by the viewers and appraisers.

[¶ 5] On December 7, 1999, the Board entered an order that adopted the hearing officer's recommended findings of fact and conclusions of law and ordered the establishment of the private road (Order I). The established private road was consistent with that recommended by the viewers and appraisers. The Board also adopted the assessment of damages made by the viewers and appraisers.

[¶ 6] Appellant filed a petition for review of administrative action regarding Order I. Upon its review, the district court partially vacated Order I by issuance of a decision letter finding that "the Viewers' determination of damages must be set aside due to lack of substantial evidence" and remanded the matter back to the Board "for the sole and narrow issue of determining damages." In particular, the district court ordered that the Board either 1) have the viewers and appraisers resubmit a report explaining their determination of damages, upon which a subsequent due process hearing would be held, or 2) hold an additional due process hearing on the existing report of the viewers and appraisers whereupon the viewers and appraisers could explain their determination of damages and be subject to cross-examination.

[¶ 7] Choosing the latter option, a third hearing on the issue of damages was held by the Board on February 13, 2001. After this hearing, the Board entered another Order that adopted the hearing officer's recommended findings of fact and conclusions of law and established the private road (Order II). Appellant again appealed Order II to the district court. Ultimately, the district court entered an order affirming the actions of the Board. This appeal followed.

### STANDARD OF REVIEW

[¶ 8] In *Wagstaff v. Sublette County Bd. of County Comm'rs,* 2002 WY 123, ¶ 7, 53 P.3d 79, ¶ 7 (Wyo.2002), a case also involving the establishment of a private road, we declared:

We review the administrative order issued by the Board as if it had come directly to this court from the Board. *Dunning v. Ankney,* 936 P.2d 61, 63 (Wyo.1997) (citing *State ex rel. Workers' Compensation Div. v. Fisher,* 914 P.2d 1224, 1226 (Wyo.1996)). We examine the entire record to determine whether substantial evidence supports the administrative agency's findings of fact. We may not substitute our judgment for that of the agency when

---

1. The legislature amended these statutes in 2000 clarifying the procedures to establish a private road. However, the 1999 version of statutes are applicable to this action. Therefore all references will be made to the 1999 version.

substantial evidence supports its decision. *Dunning*, at 63 (citing *Celotex Corp. v. Andren*, 917 P.2d 178, 180 (Wyo.1996)). "Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions." *Dunning*, at 63 (quoting *Latimer v. Rissler & McMurry Co.*, 902 P.2d 706, 709 (Wyo.1995)). We do not, however, defer to an agency's conclusions of law. If the correct rule of law has not been correctly applied, the agency's errors are to be corrected. *Dunning*, at 63; *see also generally, Mayland v. Flitner*, 2001 WY 69, ¶ 10, 28 P.3d 838, ¶ 10 (Wyo.2001) and *Miller v. Bradley*, 4 P.3d 882, 886 (Wyo.2000).

### DISCUSSION

#### *Date of Valuation/Evidentiary Issues*

■ [¶ 9] Citing Wyo. Stat. Ann. § 24-9-103, appellant contends that only after the Board has determined that the viewers' and appraisers' report—which addresses the location of the road and the amount of damages—is "just" and payment of the assessed damages by the applicant of all costs of locating the road, can the road then be declared to be a private road. Thus, appellant argues that until such time, no "taking" has occurred and, therefore, a date of valuation has yet to occur. Continuing this line of reasoning, appellant asserts that both the district court and the Board erred by precluding it from presenting additional evidence of the value of appellant's property affected by the proposed road for the time period of September 28, 1999, to June 20, 2001.[2]

[¶ 10] Appellant's argument requires us to interpret certain statutes that are applicable to the establishment of private roads. In *State by and through Dep't of Rev. v. Union Pacific Railroad Co.*, 2003 WY 54, ¶ 12, 67 P.3d 1176, ¶ 12 (Wyo.2003) (quoting *McClean v. State*, 2003 WY 17, ¶ 6, 62 P.3d 595, ¶ 6 (Wyo.2003)), we explained:

2. Appellant filed an Application for Leave to Present Additional Evidence with the district court on July 21, 2000 which was denied. Further, appellant opposed appellees' Amended Motion In Limine and filed its own Motion to

We have long recognized that conclusions of law, such as questions regarding statutory interpretation, are to be reviewed by this court *de novo*. *Hutchings v. Krachun*, 2002 WY 98, ¶ 10, 49 P.3d 176, ¶ 10 (Wyo.2002). In *Pagel v. Franscell*, 2002 WY 169, ¶ 9, 57 P.3d 1226, ¶ 9 (Wyo. 2002) (citing *Wyoming Cmty. College Comm'n v. Casper Cmty. College Dist.*, 2001 WY 86, ¶¶ 16–18, 31 P.3d 1242, ¶¶ 16–18 (Wyo.2001)), we stated:

> In interpreting statutes, our primary consideration is to determine the legislature's intent. *Fontaine v. Board of County Comm'rs*, 4 P.3d 890, 894 (Wyo. 2000); *State ex rel. Motor Vehicle Div. v. Holtz*, 674 P.2d 732, 736 (Wyo.1983). Legislative intent must be ascertained initially and primarily from the words used in the statute. *Allied–Signal, Inc. v. State Board of Equalization*, 813 P.2d 214, 219 (Wyo.1991); *Phillips v. Duro-Last Roofing, Inc.*, 806 P.2d 834, 837 (Wyo.1991). When the words are clear and unambiguous, a court risks an impermissible substitution of its own views, or those of others, for the intent of the legislature if any effort is made to interpret or construe statutes on any basis other than the language invoked by the legislature. *Allied–Signal*, 813 P.2d at 219. Moreover, "[a]ll statutes must be construed *in pari materia;* and in ascertaining the meaning of a given law, all statutes relating to the same subject or hav[ing] the same general purpose must be considered and construed in harmony." *Fontaine*, 4 P.3d at 894 (citing *State ex rel. Motor Vehicle Div. v. Holtz*, 674 P.2d at 735).

Therefore, in performing our review, we look first to the plain and ordinary meaning of the words to determine if the statute is ambiguous. *Olheiser v. State ex rel. Worker's Compensation Div.*, 866 P.2d 768, 770 (Wyo.1994) (citing *Parker Land & Cattle Company v. Game & Fish Comm'n*, 845 P.2d 1040, 1042–43

Submit Additional Evidence before the Board. Ultimately, the Board granted appellees' Motion In Limine and denied appellant's Motion to Submit Additional Evidence.

(Wyo.1993)). A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability. *Parker Land & Cattle*, at 1043. Conversely, a statute is ambiguous if it is found to be vague or uncertain and subject to varying interpretations. *Id.* We have said that divergent opinions among parties as to the meaning of a statute may be evidence of ambiguity. *Basin Electric Power Co-op. v. State Bd. of Control*, 578 P.2d 557, 561 (Wyo.1978). However, the fact that opinions may differ as to a statute's meaning is not conclusive of ambiguity. Ultimately, whether a statute is ambiguous is a matter of law to be determined by the court. *Allied–Signal*, 813 P.2d at 219.

[¶ 11] Wyo. Stat. § 24–9–101, states, in pertinent part:

Any person whose land has no outlet to, nor connection with a public road, may apply in writing to the board of county commissioners of his county for a private road leading from his premises to some convenient public road.... At the hearing, all parties interested may appear and be heard by the board as to the necessity of the road and all matters pertaining thereto. Upon the hearing of the application, whether the owner or others interested appear or not, if the board finds that the applicant has complied with the law and that the private road is necessary, the board shall appoint three (3) disinterested freeholders and electors of the county, as viewers and appraisers, and shall cause an order to be issued directing them to meet ... on the proposed road, and view and locate a private road according to the application therefor, *and to assess damages to be sustained thereby* .... The viewers shall then proceed to locate and mark out a private road in accordance with the application or in such other manner and location they deem appropriate.... *The viewers shall also at the same time assess the damages sustained by the owner over which the road is to be established* and make full and true returns, with a plat

of the road to the board of county commissioners.

(Emphasis added.) Wyo. Stat. Ann. § 24–9–103, goes on further to state:

*The viewers and appraisers so appointed, or a majority of them, shall make a report to the county commissioners at the next regular session, of the private road so located by them, and also the amount of damages, if any, assessed by them, and the person or persons entitled to such damages, and if the commissioners are satisfied that such report is just, and after payment by the applicant of all cost of locating such road, and the damages assessed by the viewers, the commissioners shall order such report to be confirmed and declare such road to be a private road, and the same shall be recorded as such.*

(Emphasis added.)

[¶ 12] Applying the plain and ordinary meaning to the language used in Wyo. Stat. Ann. §§ 24–9–101 and 24–9–103, we find no ambiguity. Wyo. Stat. Ann. § 24–9–101 clearly mandates that the viewers and appraisers assess damages at the same time they meet for the purpose of viewing the affected real property and locating the proposed road. Similarly, Wyo. Stat. Ann. § 24–9–103 squarely expresses the legislature's intent that the county commissioners involved would soon thereafter, *at the county commissioner's next scheduled session,* receive a report of the viewers and appraisers which included, in part, their assessment of damages made *at the time of their viewing of the affected property* so the county commissioners could determine if that report should be confirmed. No significant delay or later date for the assessment of damages as argued by appellant can be inferred from this language.

[¶ 13] As we recognized in *Wagstaff*, at ¶ 12, and many other previous cases dealing with the establishment of private roads, the language used in Wyo. Stat. § 24–9–101, discloses the legislature's intent that the procedure under the statute provide, in a local forum, a readily available, economically affordable, and *time efficient method* to obtain a means of access to property. *See also*

*Martens v. Johnson County Bd. of Comm'rs,* 954 P.2d 375, 380 (Wyo.1998) and *McGuire v. McGuire,* 608 P.2d 1278, 1288 (Wyo.1980). Appellant's reading of the statute frustrates this intent.

[¶ 14] Furthermore, under appellant's theory, the amount of damages would be an ever-moving target subject to potential manipulation and continual review. Given appellant's expressed scenario, unless the county commissioners entered a final order on the same day as the damages hearing, the assessment of damages would continue to remain at issue. The legislature could not have intended the damages valuation to change for an undefined period of time or that the final determination of damages be extended depending on when the county commissioners entered their final order or, as is pointed out by this action, when subsequent appeals on the county commissioners' decision are determined by the courts. We have on a number of occasions recognized that the legislature intended that good faith and reason prevail in the establishment of private roads. *Wagstaff,* at ¶ 12; *Martens,* at 380; *Dunning v. Ankney,* 936 P.2d 61, 64–65 (Wyo.1997); *Lindt v. Murray,* 895 P.2d 459, 462 (Wyo. 1995); *McGuire,* at 1288. We fail to see how an ever-changing damages assessment would promote good faith and reason.

[¶ 15] The viewers and appraisers met with Mr. Jon R. Gray, president of R.C.R., Inc., on January 15, 1999, the date of their scheduled viewing of the real property affected by the proposed private road. Mr. Gray indicated appellant had some general intent in the future to subdivide its property. Further, Mr. Gray showed the viewers and appraisers the possible location of improvements for an anticipated subdivision and golf course. At that time, however, Mr. Gray indicated that no plans had been submitted to rezone and subdivide appellant's property. The viewers and appraisers also confirmed that a subdivision plat had not been appropriately approved and recorded concerning appellant's property.

[¶ 16] Because appellant objected to the damages assessment made by the viewers and appraisers, the Board held a hearing on September 27, 1999, wherein appellant was given a full opportunity to present evidence and witnesses concerning damages, including appellant's desire to potentially subdivide its property. In fact, appellant presented the only witnesses at this hearing, calling three witnesses.

[¶ 17] The first witness, Jonathan Schnal, Planning Economic Development Director for Carbon County, testified that in August of 1998 his office received an imprecise sketch of a proposed rezoning and subdivision plan including both appellant's property as well as a neighboring property. In June of 1999, another drawing was received from appellant, but Mr. Schnal's office did not understand what was being proposed by this second drawing. Mr. Schnal indicated that the rezoning and subdivision application of appellant was on hold and in suspense because the neighboring property had not been removed from the plan or authority for such rezoning and subdivision received from the owner of the neighboring property. Furthermore, appellant had failed to provide additional requested information and had not completed the numerous and substantial steps for rezoning and subdivision. Mr. Schnal also testified that before rezoning and subdivision could occur 1) reviews would have to be completed by the State of Wyoming, Department of Environmental Quality, and the Wyoming State Engineer, 2) appellant would need to prepare and submit covenants for the subdivision that would need to be approved, and 3) appellant would need to complete, after first being approved by the necessary agencies, numerous improvements to the property. Critically, Mr. Schnal also confirmed that appellant's property remained zoned as ranch, agricultural, and mining property.

[¶ 18] The second witness, Mr. Gray, testified about appellant's plans to subdivide its property but admitted that any formal steps to complete this plan were, at minimum, still in their infancy. Mr. Gray's testimony included his opinion of the estimated value of appellant's property after rezoning and subdivision and his estimated damage calculations with respect to the proposed private road. However, Mr. Gray's opinions were based only on his own general personal expe-

riences as a developer and general information he stated he had received from realtors in the area. As such, Mr. Gray's opinions are somewhat speculative and lacking in foundation.

[¶ 19] Appellant's last witness, Thomas Grieve, was a real estate broker. Mr. Grieve confirmed that he had experience in the sale of recreational type properties in Carbon County. Nevertheless, he stated he could neither agree nor disagree with the valuations expressed by Mr. Gray concerning appellant's property because he did not have sufficient foundation to do so.

[¶ 20] Reviewing the record, we conclude that all parties, including appellant, were allowed to fully develop their respective positions on damages at the September 27, 1999 hearing. As we explained above, following the clear and unambiguous language of the applicable statutes, the assessment of damages upon the establishment of a private road must be calculated on the date of the viewing of the affected real property by the appointed viewers and appraisers and the circumstances that exist at that time. Accordingly, we hold that the district court and the Board did not err when they precluded appellant from presenting any additional evidence concerning damages after the September 27, 1999 hearing.

[¶ 21] We further note that the position of appellant points out the potential for manipulation by the owner of the affected property if assessment of damages is not limited to the date of viewing by the appointed viewers and appraisers and the circumstances that actually exist at that time. The evidence presented established that appellant did not submit its admittedly very rough sketch concerning rezoning and subdivision of its property and surrounding property until August 18, 1998, just one day before the initial hearing held in this case. Subsequently, appellant did little more to further this application. The fact that the same parties involved in this appeal were previously embroiled in contentious litigation regarding the attempted establishment of an easement across appellant's property also does not support Mr. Gray's statements regarding appellant's long-time desire to rezone and subdi-

vide its property. Appellant took no formal actions at that time to establish its alleged desire to rezone and subdivide its property. Therefore, while Mr. Gray expressed that appellant always desired to rezone and subdivide its property, these statements must be viewed as at least somewhat suspect.

[¶ 22] Finally, our holding recognizes the well-established principle that evidentiary rulings are within the sound discretion of the administrative agency or trial court including determinations of the adequacy of foundation, relevancy, competency, materiality, and remoteness of the evidence. This court will generally accede to such determinations unless an abuse of discretion is clearly shown. *See Garnick v. Teton County Sch. Dist. No. 1,* 2002 WY 18, ¶ 13, 39 P.3d 1034, ¶ 13 (Wyo.2002); *Wilks v. State,* 2002 WY 100, ¶ 19, 49 P.3d 975, ¶ 19 (Wyo.2002); *McGhee v. Rork,* 978 P.2d 577, 580 (Wyo.1999); *Goddard v. Colonel Bozeman's Restaurant,* 914 P.2d 1233, 1238 (Wyo.1996). Likewise, we have also stated on a number of occasions that determinations concerning credibility of the evidence and weight of the evidence will not be disturbed by this court unless clearly contrary to the overwhelming weight of the evidence. *Brierley v. State ex rel. Workers' Safety & Compensation Div.,* 2002 WY 121, ¶ 16, 52 P.3d 564, ¶ 16 (Wyo.2002); *Newman v. State ex rel. Workers' Safety & Compensation Div.,* 2002 WY 91, ¶ 31, 49 P.3d 163, ¶ 31 (Wyo.2002).

[¶ 23] In this case, the district court explicitly ordered that an evidentiary hearing be held by the Board "for the sole and narrow issue of determining damages." This hearing afforded appellant due process by requiring the viewers and appraisers to explain their determination of damages and to be subject to cross-examination.

### Substantial Evidence Regarding Assessed Damages

[¶ 24] In the second two issues, appellant essentially argues that the Board was presented with insufficient evidence to render an appropriate determination on the assessment of damages upon establishment of the private road. In particular, appellant proffers that the viewers and appraisers im-

properly ignored damages to *all* of appellant's land and improperly determined the damages to appellant's land within the roadway corridor, both in contravention of those requirements set forth in *Lindt v. Murray*, 895 P.2d 459 (Wyo.1995).

[¶ 25] We have previously had occasion to address the issue of establishing damages as it relates to applications for a private road under Wyo. Stat. Ann. §§ 24–9–101 *et seq.* In *Lindt*, at 463, we stated:

The Lindts claim the damage award is improper. It is evident from the proceedings before the Board that the directions given the Board by the district court in its remand order were not observed or understood. Therefore, we remand to the district court with directions that the district court remand to the Board and the Board reassemble the viewers and appraisers, or if necessary a different body of viewers and appraisers, and those viewers and appraisers assess damages as follows: (1) determine the value of the entirety of the Lindts' affected land before the private road was established; then, (2) determine the value of the Lindts' remaining land after the private road is in place; (3) subtract the "after" value from the "before" value, which then equals the damages due the Lindts. *Coronado Oil Co. v. Grieves,* 642 P.2d 423, 433 (Wyo.1982); and *see generally Mettee v. Kemp*, 236 Kan. 781, 696 P.2d 947, 949 (1985) (discussing Kansas statute which enumerates factors which may be considered in the "before-after" analysis).

*See also Mayland v. Flitner*, 2001 WY 69, ¶¶ 32–44, 28 P.3d 838, ¶¶ 32–44 (Wyo.2001) and *Miller v. Bradley*, 4 P.3d 882, 888–89 (Wyo.2000).

[¶ 26] Appellant claims that the viewers and appraisers improperly attempted to assess damages, only taking into account the damage to the land within the roadway corridor rather than taking into account the damages to the whole of appellant's property. At the hearing held on February 13, 2001, the viewers and appraisers specifically confirmed that they did consider diminution in the value of appellant's property outside the roadway corridor. However, they viewed appellant's property as range and meadowland and, therefore, determined that the property outside of the roadway would be unaffected in dollar value by the private roadway.

[¶ 27] The viewers and appraisers correctly stated the "before" and "after" parameters for the assessment of damages expressed in *Lindt v. Murray* and explained that they applied them in their evaluation. Mr. Espy testified as follows:

We just felt that it affected that corridor where the road was and not the property further in, because the—when we reviewed it that day, basically it was rangeland and meadowland, and because we inquired and there was no subdivision plat on file. So we didn't feel that the property further in was affected valuewise. We just felt that the corridor was what was affected.

When Mr. Espy was asked to explain his understanding of what *Lindt v. Murray* required of viewers and appraisers in making a damages assessment, he responded:

Basically, take the value of the property that was affected as a whole, do the damage amount, and take the value of the property again. Basically, the difference is the damages.

Mr. Espy then explained the means by which the viewers and appraisers determined the assessment of damages in this case:

Well, when we did it, basically what we came up with was—it was—since basically we viewed it as rangeland and meadowland, we viewed that the property basically outside of the corridor would have been unaffected in dollar value before and after. And it was just because, like [counsel] just asked us, you know, it would have been different, you know, if there would have been, you know, existing plats out there, or houses. But since we just viewed it as rangeland, we didn't think that it made any difference in the value of the property outside the corridor before and after. We just viewed it as the—right down the corridor were the only places that we saw that there were damages.

. . . .

We considered outside the corridor, but since we basically considered it as range or

meadowland, basically it was range or meadowland before the proposed road and it would be range or meadowland after the proposed road. So we didn't view that there was, you know, substantial—or basically hardly any change in value to that property before and after.

[¶ 28] Upon our independent review of the record, we hold that the viewers and appraisers did consider appellant's property as a whole, but their conclusion was no damage would be caused to that property with the exception of damages sustained by the actual land taken for placement of the private road. As a result, we conclude that the viewers and appraisers complied with applicable law in making this assessment and that substantial evidence existed to support their conclusion. As indicated previously, at the time of viewing, appellant's property was zoned as ranch, agricultural, and mining property.

[¶ 29] Appellant also asserts that the viewers and appraisers erred because they failed to take into consideration the highest and best use of appellant's property. Appellant posits that the viewers and appraisers should have utilized the valuation of its property assuming that it would be rezoned and subdivided. As mentioned previously, Mr. Gray testified about appellant's plans to rezone and subdivide its property and admitted that almost all the formal steps to complete this plan remained unsatisfied. Mr. Schnal testified that the rezoning and subdivision application of appellant was on hold for a multitude of reasons. Appellant's property also remained zoned as ranch, agricultural, and mining property. Therefore, substantial evidence exists to support the assessment of damages of the viewers and appraisers based on appellant's property being used as grazing and meadowland.

[¶ 30] Appellant also contests the manner in which the viewers and appraisers estimated the damages incurred as a result of the placement of the private road. Specifically, appellant argues that no comparable property sales or market values were used by the viewers and appraisers in making their assessment and no factual basis was established for the $1.00 per running foot value used in their calculations.

[¶ 31] The viewers and appraisers utilized their own expertise and experience in arriving at a value. The appointed viewers and appraisers had previously served in this capacity in other private road and similar proceedings. They had experience in banking, accounting, real estate sales, and ranching. Comparable sales in the same locality were unavailable. Thus, the viewers and appraisers utilized their independent knowledge of a similar transaction regarding the valuation of a private road easement in another location and made adjustments considering the difference in location and other factors. The viewers and appraisers also utilized their general knowledge of land values and the real estate market for similar property in the area. This rational and all-inclusive approach taken by the viewers and appraisers derived a fair and equitable assessment of damages.

[¶ 32] We indicated in *Carney v. Board of County Comm'rs of Sublette County,* 757 P.2d 556, 561 (Wyo.1988), that appointed viewers and appraisers must be disinterested freeholders and electors of the county who are knowledgeable of the local conditions and will apply that knowledge and their common sense in making their determination. This is precisely what the viewers and appraisers did in this case. The record before us makes it apparent that the viewers and appraisers made the appropriate review utilizing the required "before-after" analysis to determine damages. In reviewing appeals from administrative bodies, we cannot substitute our judgment for that of the agency as long as the decision is supported by substantial evidence. Hence, we hold the Board's finding of damages is supported by substantial evidence.

### Due Process.

[¶ 33] Finally, appellant asserts that it was not afforded due process because it was not allowed to question the third viewer and appraiser at the February 13, 2001 hearing. While two of the viewers and appraisers testified at this hearing and were subject to substantial cross-examination by appellant, the third viewer and appraiser, Mr. Quealy,

 

due to a serious illness, was unable to attend the hearing.

[¶ 34]   Appellant was given a due process hearing to address the submitted report of the viewers and appraisers and utilized this hearing to extensively cross-examine two of the three viewers and appraisers concerning the determination of damages.   Testimony elicited from the two viewers and appraisers available for hearing indicated that the three viewers and appraisers collectively determined where to locate the private road and what damages should be assessed.   Nothing in the record even remotely reflects that Mr. Quealy dissented or disagreed in any fashion with the decision reached and detailed within the submitted report of the viewers and appraisers.   Therefore, it appears that the testimony of Mr. Quealy would have been merely cumulative.

[¶ 35]   Due to the fact that appellant has failed to demonstrate how the testimony of Mr. Quealy would have affected the calculation of damages or the actual award of damages and the record indicates appellant was afforded a fair and just opportunity to appear before the Board to contest the damages determined by the viewers and appraisers, we hold appellant was afforded requisite due process under the applicable statutes.   *See Martens v. Johnson County Bd. of Comm'rs,* 954 P.2d at 380; *Carney v. Board of County Comm'rs of Sublette County,* at 559–60; and *Gold v. Board of County Comm'rs of Teton County,* 658 P.2d 690, 695–96 (Wyo.1983).

## CONCLUSION

[¶ 36]   For those reasons stated above, we affirm the Board's establishment of the private road and assessment of damages in this case.