2006 WY 95

**Carl W. CLOSS and Emma Lou Closs, Appellants (Petitioners),**

v.

**James D. SCHELL and Debra L. Schell; and The Converse County Board of Commissioners, Appellees (Respondents).**

No. 05–243.

Supreme Court of Wyoming.

July 31, 2006.

Representing Appellants: Charles S. Chapin, of Crowell, Chapin, & Dixon, LLC, Casper, Wyoming.

Representing Appellees: James A. Hardee, Douglas, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL *, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1]   James and Debra Schell are owners of property in Converse County. They applied to the Board of County Commissioners of Converse County (the Board) for establishment of a private road to obtain access from their property to a public road. The Board determined that a private road was necessary and established a road that crossed the property of Mr. and Mrs. Closs. The Board also awarded damages to the Closses for the taking of their property. Dissatisfied with the location of the road and the amount of damages, the Closses filed a petition for review with the district court. The district court affirmed the Board's decision. We also affirm.

### ISSUES

[¶ 2]   The issues are:

A.  Did the viewers/appraisers properly determine the "before and after value" as required by Wyo. Stat. Ann. § 24-9-101(j) and did the Board inappropriately disregard and/or dismiss the comparables relied upon by the Closses' appraiser when determining the extent of damages?

B.  Were the Closses deprived of due process because viewer/appraiser Sorenson did not attend the final hearing?

C.  Was the viewing/appraisal process nullified because the viewers/appraisers were directed that the private road had to exit from the Closses' property at a point which intersected with an easement acquired by the Closses from a third-party?

D.  Is the final report of the viewers/appraisers invalid because a plat of the

* Chief Justice at time of oral argument.

chosen road was not filed contemporaneously with the report?

## FACTS

[¶ 3] The Schells purchased a parcel of recreational property in Converse County in 1985. The Schells believed that their property was accessible by a permanent right-of-way easement on a two-track road that tra-versed land owned by the Closses and Vincent Gronski.[1] The Schells later discovered that this easement was not legally enforceable.[2]

[¶ 4] The Schells sought to obtain easements from the Closses and Mr. Gronski to formally secure access to their property. After those attempts failed, the Schells filed an application for a private road easement.[3]

1. Prior to August 1985, the parcels owned by the Schells, the Closses and Mr. Gronski were owned as one parcel by Mr. Olson. After Mr. Olson sold the Schells their parcel, but before the other parcels were sold to the Closses and Mr. Gronksi, the Schells accessed their property via the two-track road.

2. Although the contract for the purchase of the property from Mr. Olson contained language purporting to give a permanent right-of-way easement over the road, later conveyances did not properly reserve the right-of-way.

3. The application was filed pursuant to Wyo. Stat. Ann. § 24–9–101 (LexisNexis 2003) which provides in part:

(a) Any person whose land has no outlet to, nor connection with a public road, may file an application in writing with the board of county commissioners in the county where his land is located for a private road leading from his land to some convenient public road. The application shall contain the following information:

(i) The legal description of the land owned by the applicant to which access is sought and a statement that the land is located within the county;

(ii) A specific statement as to why the land has no legally enforceable access, other than a waterway, and whether the land is surrounded on all sides by land owned by another person or persons or a natural or man-made barrier making access unreasonably costly;

(iii) A description of the applicant's efforts to purchase a legally enforceable access to a public road;

(iv) A description sufficient to identify the general location of any access routes proposed by the applicant;

(v) The legal description and the names and addresses of the affected parties of all land over which any proposed access routes would cross. Affected parties includes the owners of record, owners of recorded easements and rights of way and any lessee, mortgagee or occupant of the land over which any proposed road would cross and may include the state of Wyoming; and

(vi) A statement as to whether any actions of the applicant or any person with the consent and knowledge of the applicant, caused the applicant's land to lose or to not have any legally enforceable access.

(b) Within ten (10) days after filing an application with the board, the applicant shall give notice in writing by certified mail, with return receipt, to the affected parties of all lands over which any private road is applied for, of his pending application for a private road. The notice shall include a complete copy of the original application and any amendments thereto.

(c) The board shall review the application within thirty (30) days of its receipt and if the board finds the application contains the information required by subsection (a) of this section and notice has been provided in accordance with subsection (b) of this section, it shall schedule a hearing to determine whether the applicant has no legally enforceable access to his land. The hearing shall be scheduled at a date that allows the applicant time to give all notice required under this section.

(d) If the applicant has had access to his land and that access is being denied or restricted, the board of county commissioners may grant temporary access to the applicant over a route identified by the board until the application has been processed and finalized.

(e) After the board has scheduled a hearing date under subsection (c) of this section, the applicant shall give written notice of the date, time and place of the hearing on the application, by certified mail with return receipt, to all affected parties named in the original application and any other landowners the board believes may be affected by the application or any alternative route which may be considered by the board or the viewers and appraisers. The written notice shall include a copy of the original application and any amendments thereto and shall be provided at least sixty (60) days prior to the pending hearing. If any affected party is a nonresident, and there is no resident agent upon which personal service can be had, then the notice may be published once a week for three (3) weeks in a newspaper published in the county. The first publication shall be at least sixty (60) days prior to the hearing.

(f) The board may assess to the applicant costs for acting on the application under this section and W.S. 24–9–103 and require the applicant to file a bond to pay for those costs.

(g) All affected parties having an interest in the lands through which the proposed road or any

The application alleged that the property was landlocked and the most convenient access to the property was via the two-track road. Prior to the initial hearing on the application, Mr. Gronski granted an easement to the Schells and was released from the proceedings. The Closses continued to refuse to grant an easement, but submitted a proposal for an alternate route.

[¶ 5] In accordance with Wyo. Stat. Ann. § 24-9-101(c), the Board held an initial hearing on the petition. The Board determined the Schells had complied with the requirements of Wyo. Stat. Ann. § 24-9-101 in making and filing their application and the Schells had no outlet to or connection with a convenient public road.

[¶ 6] The Board appointed three viewers and appraisers—Richard Grant, Joy Sorenson, and Brad Boner (collectively, "viewers"). Mr. Grant and Mr. Boner met with both parties on the Closses' property to view the proposed easements on May 26, 2004. Ms. Sorenson was unable to attend this viewing but returned on June 8, 2004, with Mr. Grant to review the proposed routes. The Schells' route incorporated an existing two-track road that crossed the middle of the Closs property and continued through the Gronski property to the Schell boundary. The alternative easement proposed by the Closses followed their southern boundary line and did not provide a connection to the Gronski easement. After walking and marking out each proposed route, the viewers determined that the Schells' proposal was the most reasonable and convenient route.[4]

[¶ 7] On June 14, 2004, the viewers submitted their report to the Board detailing their findings and assessing damages. A final hearing was held on July 7, 2004, to address the report in accordance with Wyo. Stat. Ann. § 24-9-103(a) (LexisNexis 2003). At the hearing, the Closses objected to the

alternative road may pass may appear at the hearing and be heard by the board as to the necessity of the road and all matters pertaining thereto.

(h) If at the completion of the hearing the board finds that the applicant has satisfied the requirements of this section and access is necessary because the applicant has no legally enforceable access, the board shall appoint

report because it failed to include the value of their property before and after placement of the proposed road and the viewers did not file a plat with the report. The Board overruled the objection.

[¶ 8] The Board entered its Findings, Conclusions and Decision on the Report of Viewers and Appraisers on August 4, 2004. The Board established the road requested by the Schells with the modification suggested by the viewers. The Board also assessed damages for the taking of the Closses' property. The Closses filed a petition for review in the district court. The district court affirmed the Board's decision. This appeal followed.

### STANDARD OF REVIEW

[¶ 9] We review administrative decisions pursuant to Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2005):

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

three (3) disinterested freeholders and electors of the county, as viewers and appraisers....

4. The viewers made a slight modification to the Schells proposed route at the entrance of the Closses property to avoid encroaching upon the property of a third party who had not been provided notice of the proceeding.

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

[¶ 10] In conducting our review, "we accord no special deference to the district court's conclusions." *Bailey v. State ex rel. Wyo. Workers' Safety Comp. Div.*, 2002 WY 145, ¶ 6, 55 P.3d 23, 25 (Wyo.2002). Rather,

[w]e review the administrative order issued by the Board as if it had come directly to this [C]ourt from the Board. We examine the entire record to determine whether substantial evidence supports the administrative agency's findings of fact. We may not substitute our judgment for that of the agency when substantial evidence supports its decision. "Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions." We do not, however, defer to an agency's conclusions of law. If the correct rule of law has not been correctly applied, the agency's errors are to be corrected.

*Wagstaff v. Sublette County Bd. of County Comm'rs*, 2002 WY 123, ¶ 7, 53 P.3d 79, 81 (Wyo.2002) (internal citations omitted).

### DISCUSSION

[¶ 11] The Closses claim that several errors require vacating the order establishing the private road and the assessing of damages. First, the Closses claim that the viewers erred by failing to determine the before and after values for their property and that the Board improperly disregarded the testimony of their expert appraiser. Second, the Closses contend that they were denied due process of law because one of the viewers was absent from the final hearing. Third, the Closses assert that the viewers' report is invalid because it was based on the false assumption that any route had to connect with the Gronski easement. Finally, the Closses contend the viewers erred by failing to file a plat concurrently with the final report.

### Assessment of Damages

[¶ 12] The Closses dispute the amount of damages assessed for the taking of their property. They contend that the viewers' final report is invalid because it failed to properly set out the "before and after" values of their property as required by Wyo. Stat. Ann. § 24–9–101(j) for private road applications. The Closses also contend that the Board inappropriately disregarded the testimony of their expert appraiser.

[¶ 13] Wyo. Stat. Ann. § 24–9–101(j) provides:

In determining any damages to be suffered by the owner or owners of the lands through which the access shall be provided, **the viewers and appraisers shall appraise the value of the property before and after the road is in place.** Damages also may include reasonable compensation for any improvements on the lands over which any private road is to be granted which were not paid for and will be used by the applicant.

(Emphasis added.) We have previously indicated a preference for a before and after valuation to be separately stated by the viewers. In *Mayland v. Flitner*, 2001 WY 69, ¶ 44, 28 P.3d 838, 853 (Wyo.2001), we stated that "[i]n the interest of clarity, instructions to appraisers in these matters should provide direction to set out the before and after values of the impacted property as well as the factors affecting those values."

[¶ 14] In this case, the instructions given to the viewers provided:

1. . . . .

(c) In determining any damages to be suffered by the owner or owners of the lands through which the access shall be provided, the viewers and appraisers shall appraise the value of the property before and after the road is in place. Damages also may include reasonable compensation for any improvements on the lands over which any private road is to be granted which were not paid for and will be used by the applicant.

. . .

5. The lands requested are to be utilized only for the purpose of a private roadway. You are to assess the damages sustained by the owners over which the road is to be established and to report that amount to the board of county commissioners. You are to do this faithfully and impartially and the amount of damages, if any, assessed is to be an amount which will reasonably and fairly compensate the owners for the damages which will be sustained by the establishment of the roadway. You shall assess such damages. It will be necessary to explain to the board of commissioners and the parties how you arrived at all figures.

In their final report, the viewers determined that the Schells owed the Closses $1,350.00 in damages. They set forth their calculations as follows:

It is in our findings that a value cannot be established for the affected property. This decision is based on the fact that with mountain property you have a range of $500.00 per acre to $1,500.00 per acre depending on the number of acres, location, improvements, water, etc. The true market value is then determined when an actual sale is made. We feel it is impossible to determine the actual affect this easement will have on the property values until all the land involved has been placed on the open market, including the property that this easement is being established for.

As for the direct and indirect damages incurred by the establishment of this easement, the following is our recommendation for compensation:

As per survey:

2936.3 ft long × 20 ft wide = 58726 sq.ft.

58726 sq.ft. 43560 sq.ft./acre = 1.35 acres

1.35 acres @ $1000.00/acre = $1350.00

Although the before and after values were not separately stated in the final report, two of the viewers testified at the final hearing explaining their determination of damages. As explained through Mr. Grant's testimony, the viewers found that mountain property in that area sold within a range of $500.00 per acre to $1,500.00 per acre. The viewers took an average of those numbers and multiplied it by the acreage affected by the placement of the road to determine the amount of damages. The viewers then discounted that amount by twenty-five percent (25%) to account for the Closses' use of the road.

[¶ 15] We have previously allowed the viewers to testify at the final hearing explaining their valuation rather than requiring the submission of an amended final report. In *R.C.R., Inc., v. Deline*, 2003 WY 62, ¶ 6, 70 P.3d 214, 216 (Wyo.2003), the parties filed a petition for review with the district court claiming the viewers improperly assessed damages. Upon remand, "the district court ordered that the Board either 1) have the viewers and appraisers resubmit a report explaining their determination of damages, upon which a subsequent due process hearing would be held, or 2) hold an additional due process hearing on the existing report of the viewers and appraisers whereupon the viewers and appraisers could explain their determination of damages and be subject to cross-examination." *Id.*, ¶ 6, 70 P.3d at 216. The Board chose the later option. *Id.*, ¶ 7, 70 P.3d at 216. At the second hearing, the viewers and appraisers testified that they applied the "before-after" analysis in assessing damages. *Id.*, ¶ 27, 70 P.3d at 221. However, they felt that the property outside of the corridor would have been unaffected in dollar value before and after the road was established. *Id.* Upon our review, we found that the viewers and appraisers' testimony regarding their methodology in calculating damages was acceptable. *Id.*, ¶ 28, 70 P.3d at 222. We held that "the viewers and appraisers did consider appellant's property as a whole, but their conclusion was no damage would be caused to that property with the exception of damages sustained by the actual land taken for placement of the private road." *Id.* We concluded that the viewers and appraisers complied with the applicable law in making their assessment and that substantial evidence existed to support their conclusion. *Id.*

[¶ 16] In this case, Mr. Grant testified as to his understanding of the methodology for calculating damages. He explained that "[y]ou find a dollar value of the property

before the easement, and a dollar value after." Mr. Boner agreed with Mr. Grant's explanation when asked by counsel. Mr. Grant further testified:

As we sit down and look at this process we are faced with determining what the value of that property is the minute **before** an easement is established and a minute **after** the easement is established.

. . .

That's where we had a tough time determining the value before and after. In the compensation that we've come up with, we have compensated for the amount of acreage that has been affected by the road.

(Emphasis added.) Their testimony demonstrates that the viewers understood that damages were required to be calculated by a "before and after" valuation of the Closses' property, but that they concluded no damages were caused to the property except damages sustained by the actual land taken for the placement of the private road.

[¶ 17] We have recognized that

[w]ith regard to the establishment of private roads, "the legislature intended the procedure under [§ 24–9–101] to provide in a local forum a readily available, economically affordable, and time efficient method to obtain a means of access to property." *Martens v. Johnson County Board of Commissioners,* 954 P.2d 375, 380 (Wyo.1998). It is our role, in reviewing private road decisions of county boards of commissioners, to further that legislative intent and leave intact county decisions based on the recommendation of local landowners, who were sworn to be fair and impartial, of the damage caused by the grant of a private road. This is particularly true in this case where the viewers did everything within reason to thoroughly investigate and evaluate the damages.

*Elk Horn Ranch, Inc. v. Bd. of County Comm'rs (In re Croell Redi Mix, Inc.),* 2002 WY 167, ¶ 15, 57 P.3d 1218, 1225 (Wyo.2002). "So long as it is clear from the record the [Board] fully compensated [the landowner] for the difference in values of his land before and after the taking, [its] action must be sustained." *See Mayland,* ¶ 39, 28 P.3d at 852.

[¶ 18] In this case, the viewers understood the assessment of damages required the determination of before and after values of the Closses' property. A majority of the viewers attended the final hearing and were examined by counsel concerning their valuation process. Clearly "[i]t would serve no valid purpose to remand this matter and require the [viewers] to provide 'before and after' values which would simply reflect the value difference in the amount of the damages already determined." *Mayland,* ¶ 43, 28 P.3d at 853.

[¶ 19] We also do not find that the Board inappropriately disregarded the testimony of the Closses' expert appraiser. After careful consideration of all of the evidence, the Board chose to give the viewers' testimony more weight and credence than the testimony of the Closses' expert. The Board explained its reasoning:

The Viewers and Appraisers testified that they did follow the instructions given to them and determined that the value of the property before the easement was granted was one thousand dollars an acre. They determined this by their long familiarity with the area and prior sales prices in the area of which they were aware. The total value of the 180 acres was found to be reduced in value afterwards by $1350.00. Mr. Hilston, however, testified that he had found comparable land values north of Newcastle, Wyoming, around the Devils Tower Area, and one around the Fort Laramie, Wyoming, area, and after making adjustments, determined the acreage to be worth about $2100 an acre before the easement ($336,000 total) and $2000 less ($334,-000 total) if no easement was granted or if the easement was limited to the proposal of the land owner. Mr. Hilston testified that the difference would be much greater (and the land worth less) in the after value if the parcel was split down the middle with a public road because the landowner would lose his future right to subdivide the acreage into smaller lots.

. . .

The Viewers and Appraisers walked over and observed the property, and have con-

siderable knowledge and experience of land values in the area. Mr. Hilston was using sales on land he has not seen and has had little or no experience in the area in question. Mr. Hilston also appeared to be basing his opinion of a significant decrease in land values due to a "public" road down the center of the property, thereby hindering a future subdivision of the property. The Commissioners believe no public road has been recommended and that they are not approving a public road. The Commissioners also believe that no subdivision is now planned and that any possible future subdivision is speculative.

"We will not substitute our judgment for that of the agency when substantial evidence supports the decision." *Elk Horn Ranch, Inc.,* ¶ 13, 57 P.3d at 1224–1225. The Board simply found Mr. Hilston's opinion less persuasive than that of the viewers, which was well within the Board's discretion. *Id.*

[¶ 20] Upon our review of the record, we find no error in the Board's acceptance of the viewers' assessment of damages. The viewers concluded that the only damages caused to the property were damages sustained by the actual land taken for the placement of the private road. The viewers applied their knowledge of the local conditions and common sense in making their determination. *R.C.R., Inc.,* ¶ 32, 70 P.3d at 222. The record makes it apparent that the viewers made the appropriate review utilizing the required "before-after" analysis to determine damages. *Id.* The viewers complied with applicable law in making their assessment and substantial evidence exists to support that assessment.

### Due Process

■ [¶ 21] The Closses claim that they were denied their right to due process because one viewer was absent from the July 7, 2004, hearing. Although two of the viewers testified at the hearing and were subject to cross-examination, the third viewer, Ms. Sorenson, was unable to attend. The Closses contend that Ms. Sorenson was the only real estate professional consulted about recreational comparables and, as a result, only she could provide information concerning the comparables used in the viewers' calculation of damages. The Closses claim that the testimony of the other viewers was insufficient because they could not produce copies of the recreational comparables. Further, the other viewers admitted that Ms. Sorenson was the best source to answer any questions about the recreational comparables.

[¶ 22] In *Carney v. Board of County Comm'rs,* 757 P.2d 556, 559 (Wyo.1988), we recognized that landowners have a right to a due process hearing before the board in a proceeding to establish a private road because of the property rights that are involved. *See also Voss v. Albany County Comm'rs,* 2003 WY 94, ¶ 23, 74 P.3d 714, 721 (Wyo.2003) ("the parties to a private road action are afforded due process by their right to a contested case hearing before the Board"). Here, the Closses were afforded a due process hearing before the Board enabling them to lodge their objections concerning the final report submitted by the viewers. Although Ms. Sorenson was not present to testify, neither the statutes nor case law require the presence of all the viewers at the hearing. *See R.C.R., Inc.,* ¶ 33–35, 70 P.3d at 222–223 (finding no due process violation occurred despite absence of one viewer and appraiser). *See also Wagstaff,* ¶ 29, 53 P.3d at 86 (testimony was elicited from only two of the viewers and appraisers). Two of the viewers were present to testify and were extensively cross-examined by the Closses. Nothing prevented the Closses from subpoenaing Ms. Sorenson or requiring the other viewers to produce copies of the comparables used. We find no violation of the Closses' right to due process.

### Consideration of Alternate Routes

■ [¶ 23] For this claim of error, the Closses contend that the viewers' final report should be nullified because the viewers were under the false impression that the chosen route had to connect to the Gronski easement. In making this contention, the Closses recognize that an applicant has the right to propose alternate locations for a road pursuant to *Dunning v. Ankney,* 936 P.2d 61 (Wyo.1997). However, the Closses assert that our holding in *Voss* prohibits the appli-

cant from limiting the Board to consideration of only one roadway. Specifically, the Closses claim that the viewers' understanding that any chosen route had to connect to the Gronski easement "infected the private road process." They believe "[i]t preordained the choice of [the Schells'] proposed road as the chosen route, in derogation of the express prohibitions and spirit of *Voss.*"

[¶ 24] We disagree. The viewers' report reveals that each proposed route was given appropriate consideration. The report explains that the viewers walked and marked out each route. Upon doing so, they discovered the Schells' proposal used an existing two-track road that had been utilized to access the property since 1985. The two-track road connected directly to the easement granted by Mr. Gronski and led to a public road. In contrast, the alternate route proposed by the Closses was not an existing roadway and required significant cost to build. The proposed alternate route ran along the southern boundary of the Closses' property and it neither connected to the Gronski easement nor to a public roadway. That portion of the Closses' property contained a sharp incline and soft areas, or "bogs." Establishing a road along this route would also require the road to cross a creek and the removal of many trees. After considering each route, the viewers concluded that the Schells' proposal was more convenient and reasonable.

[¶ 25] At the July 7, 2004, hearing, the Board received evidence concerning each proposed route. The Board agreed with the viewers that the Schells' proposal was more reasonable and convenient. The Board found that the expense and physical obstacles in the Closses' proposed route made it impractical except under the most desperate of circumstances. The Board also expressly stated that its decision was not premised on the fact that the Closses' proposed route did not connect with the Gronski easement.

[¶ 26] We have held that "convenience and reason should prevail in the establishment of roads, which was, in our view, what the legislature intended when it enacted the private road statute." *Lindt v. Murray,* 895 P.2d 459, 462 (Wyo.1995). The county commissioners are bound to approve only such means of access to landlocked property as are reasonable. *Ferguson Ranch, Inc. v. Murray,* 811 P.2d 287, 291 (Wyo.1991). The Schells' sole purpose for filing a petition to establish a private road was to ensure access to their property. A proposed route that requires the building of an entirely new road that does not connect to any other existing roadway or easement is neither convenient nor reasonable. *See Mayland,* ¶ 22, 28 P.3d at 847 (holding that "the County Commissioners were under no compulsion to seriously consider the suggestion that an entirely new road be built when two routes already exist"). Accordingly, we find no error.

### Filing of the Plat

[¶ 27] The Closses claim that damages were incorrectly assessed because the viewers failed to file a plat concurrently with their final report as required by Wyo. Stat. Ann. § 24–9–101(h).[5] They acknowledge that a survey was submitted to the Board with the application for a private road. However, they claim that because the viewers had to correct a portion of the road that crossed the property of an unnoticed third party, the measurements of the road were inaccurate. They contend that these inaccurate measurements led to an incorrect assessment of damages.

[¶ 28] The Schells counter that no error occurred by failing to file a plat concurrently with the final report. The Schells claim that the purpose of the plat is to apprise the parties of the location of the road selected by the viewers. Here, both a survey and a topographical map were submitted with the petition. All parties were aware of the location of the road selected by the viewers. The Schells claim that although a plat was not filed concurrently with the report, a plat was

---

5. Wyo. Stat. Ann. § 24–9–101(h) (LexisNexis 2003) provides in pertinent part:
  ... The viewers and appraisers shall also appraise any damages sustained by the owner over which the road is to be established and make full and true returns, with a plat of the road to the board of county commissioners....

eventually filed as ordered by the Board. The Schells further contend that the Closses suffered no damages because the measurements of the road were the same in both the survey and in the final plat.

[¶ 29] In *Carney*, the Board accepted the viewers and appraisers' amended report and ordered the applicant to survey and prepare a plat of the designated road. *Carney*, 757 P.2d at 558. The plat of the road was completed in February of 1986, and it was presented to the Board at its meeting on July 1, 1986. *Id.* Upon determining that the applicant had paid the required costs and damages and that the plat had been completed as ordered, the Board declared the Carney route to be a private road and ordered that the plat be filed with the county clerk. *Id.* We approved of this practice without comment.

[¶ 30] In this case, the Board accepted the viewers' report and ordered the Schells to file a certificate of survey within twelve months. The Board further required that the assessment of damages be paid upon completion of the survey. This procedure is similar to that utilized in *Carney*. In addition, the measurements of the road upon the filing of the final plat were the same as the survey filed with the petition for a private road. Even if the measurements had been different, the method used to assess damages in this case could easily have been applied to correct any discrepancies. As a result, any alleged irregularity was *de minimis*. *See Voss*, ¶ 19, 74 P.3d at 720 (finding any alleged irregularity was *de minimis* and that the Board substantially complied with the procedural requirements of the statute).

### CONCLUSION

[¶ 31] We find that the Board's decision was supported by substantial evidence. The viewers did not err in their assessment of damages and the Board did not inappropriately disregard Mr. Hilston's testimony. The Closses' due process rights were not violated. We further find that the Board and viewers gave appropriate consideration to each of the proposed routes for placement of the road. Finally, we find no prejudicial error to the Closses as a result of the late filing of the plat.

[¶ 32] Affirmed.